Kyle McLean (SBN 6344126)
Lisa R. Considine (*pro hac vice* forthcoming)
Leslie Pescia (*pro hac vice* forthcoming)
745 Fifth Ave, Suite 500
New York, NY 10151
Telephone: 212-532-1091
Facsimile: 646-417-5967
Email : kmclean@sirillp.com
Email: lconsidine@sirillp.com
Email: lpescia@sirillp.com

*Attorneys for Plaintiff and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

SANJAY NARAYANAN and ROZ SAEDI,
on behalf of themselves and all others similarly situated,

        Plaintiff,

    vs.

APPLE INC.,

        Defendant.

Civil Action No.:  5:24-cv-7286

**COMPLAINT – CLASS ACTION**

**1) Breach of the Implied Warranty of Merchantability**

**2) Violations of California Unlawful Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.***

**3) Violations of California Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.***

**4) Unjust Enrichment/Quasi-Contract**

**5) Breach of Express Warranty**

**6) Breach of Express Warranty (CA)**

**7) Violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791, *et seq.***

**8) Fraud By Omission**

**JURY TRIAL DEMANDED**

1

**CLASS ACTION COMPLAINT**

Plaintiffs Sanjay Narayanan and Roz Saedi, individually and on behalf of the Class of similarly situated persons defined below, allege the following against Defendant Apple, Inc. ("Apple" or "Defendant"), based upon personal knowledge with respect to themselves and on information and belief derived from, among other things, investigation of counsel and review of public documents as to all other matters:

**INTRODUCTION**

1.      This is a nationwide class action brought by Plaintiffs on behalf of themselves and other similarly situated consumers who purchased Apple MacBook Pro laptops equipped with Apple-branded OEM lithium-ion batteries, Apple Magic Trackpads, or Apple-branded OEM lithium-ion batteries for use in an Apple device ("Defective Devices[1]") (for personal or household use and not for resale ("Class[2]" or "Class Members")).

2.      Apple designs, manufactures and markets smartphones, personal computers, tablets, wearables and accessories, and sells a variety of related services. Included in that is the design, manufacture and marketing of laptops and other devices powered by Apple-branded lithium-ion batteries.

3.      Lithium-ion batteries inside the Apple devices can swell and expand due to a gas buildup, causing the battery to bulge and push against the sealed casing. That is precisely what happened to a series of Apple laptops manufactured between September 2015 and February 2017. In June 2019, Apple announced that it had determined that certain 15-inch MacBook Pro laptops contained defective lithium-ion batteries that could swell and expand, posing a fire hazard, and issued a recall for those specific laptops.[3]

---

[1] Plaintiff reserve the right to amend or modify the definition of the Defective Device based on information learned in discovery and further investigation.
[2] The precise definition of the Class is found below. Plaintiff reserve the right to amend or modify the definition of the Class based on information learned in discovery and further investigation.
[3] *See* https://www.cpsc.gov/Recalls/2019/Apple-Recalls-15-Inc-MacBook-Pro-Laptop-Computers-Due-to-Fire-Hazard (last accessed October 11, 2024).

**CLASS ACTION COMPLAINT**

4.      Specifically, the recalled laptops were only those that had a 15.4 inch (diagonal) display, 2/2-2.5 GHz processors, 256GB-1TB solid-state storage, two Thunderbolt 2 ports, two USB 3 ports, and one HDMI port that were sold between September 2015 and February 2017. Approximately 432,000 recalled laptops were sold in the United States.

5.      While Apple recalled those specific laptop computers, it continues to design, manufacture, and market MacBook laptops and other devices, like the Apple Magic Trackpad, that are equipped with Apple-branded OEM lithium-ion batteries that damage the consumer's devices and present a serious safety risk.

6.      Plaintiff brings this class action on behalf of themselves and the Class (defined below) who purchased MacBook laptop devices or Apple Magic Trackpads powered with an Apple-branded OEM lithium-ion battery to obtain damages, restitution, and/or other equitable relief.

7.      As a result of Apple's conduct, Plaintiff and the Class have suffered injury in fact, including economic damages.

8.      Plaintiff and the Class bring this suit for economic damages they sustained.  Given the massive number of the Defective Devices sold nationwide, this class action is the proper vehicle for addressing Defendant's misconduct and attaining needed relief for this affected. Plaintiff alleges violations of the California Unlawful Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL"); violations of the California Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.* ("CLRA"); violations of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1791 *et seq.*, and common law claims.

**PARTIES**

9.      Plaintiff Sanjay Narayanan is, and at all times mentioned herein was, an individual citizen of the State of Florida who purchased an Apple laptop that developed a swollen battery,

**CLASS ACTION COMPLAINT**

forcing Plaintiff to seek repair services during the applicable statute of limitations period. Plaintiff also purchased an Apple Magic Trackpad that developed a swollen battery.

10.     Plaintiff Roz Saedi is, and at all times mentioned herein was, an individual in the State of California who purchased an Apple laptop that overheated, forcing Plaintiff to seek a replacement device during the applicable statue of limitations period.

11.     Defendant Apple is a California corporation with a principal place of business at One Apple Park Way, Cupertino, California 95014. Apple regularly conducts business throughout California and in this judicial district. Apple has been manufacturing laptops for decades and produced MacBook laptops and other devices with defective lithium-ion batteries.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over this action under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2). The amount in controversy exceeds $5 million, exclusive of interest and costs. Upon information and belief, the number of class members is over 100, many of whom have different citizenship from Defendant. Thus, minimal diversity exists under 28 U.S.C. § 1332(d)(2)(A).

13.     This Court has jurisdiction over Defendant because it operates in this District, is headquartered in this District, and a substantial part of the unlawful business practices which give rise to this action occurred in this District.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(1) & (c) and CAFA because Defendant is subject to personal jurisdiction in this District and is, therefore, a resident of this District. Moreover, all or a substantial part of the underlying facts occurred within this District.

## COMMON FACTUAL ALLEGATIONS

15.     Apple designs, manufactures and markets smartphones, personal computers, tablets, wearables and accessories, and sells a variety of related services.

**CLASS ACTION COMPLAINT**

16.     Included in that is the design, manufacture and marketing of laptop devices that are powered with lithium-ion batteries.  The subject batteries were installed in Apple laptops and sold throughout the country and the world, including Plaintiff's MacBook Pro (Retina 13-inch Early 2015) laptop.

17.     Apple also designs, manufactures, and markets Apple Magic Trackpads, a type of electronic device with a flat surface that detects the motion and position of a user's fingers and controls a pointer in the user interface on a screen.

**The Defective Devices Pose an Unreasonable Risk of Injury and Damage**

18.     Apple laptop  models equipped with Apple-branded lithium-ion batteries have been at the center of several incidents involving battery swelling, overheating, and in some cases, explosions. These issues have raised significant safety concerns among users and have led to a series of warnings and advisories regarding the potential hazards of these batteries.[4]

19.     A major problem with Apple's lithium-ion batteries is that the internal temperature rises, leading to the battery's internal reactions to accelerate. This causes swelling, leakage of gases and, in severe cases, combustion or explosion.

20.     The defect in the lithium batters renders the Defective Devices unfit for the ordinary purpose for which they are used, which is safe and reliable powering of Apple devices.

21.     The lithium-ion batteries used in many of Apple's devices contain a delicate balance of positive and negative electrodes separated by an electrolyte.[5] When the barrier between these electrodes degrades or is damaged, it can lead to a dangerous and uncontrollable chain reaction, causing the battery to swell, overheat, and potentially explode. Overcharging the battery or prolonged exposure to high temperatures can accelerate the degradation process, further

---

[4] *See* https://www.mbsdirect.com/mbs-blog/article-beware-the-bulging-battery-and-what-to-do-if-yours-expands (last accessed October 11, 2024).
[5] Townsend, C., & Cohen, J. (2023, December 5). *Help, my laptop battery is swollen! Now what?* PCMag. https://www.pcmag.com/how-to/help-my-laptop-battery-is-swollen-now-what (last accessed October 11, 2024).

**CLASS ACTION COMPLAINT**

exacerbating the risk of battery failure.[6] The image below shows the interior of a lithium-ion battery.[7]



22.     The subject batteries were installed in thousands of Apple laptops sold and distributed across the U.S. The batteries contained a defect that makes them prone to overheating, which creates a danger of explosion and fire in the laptops.

23.     Users have reported several signs that indicate a potential battery issue in Apple laptops and trackpads. These include the laptop not sitting flat due to a swollen battery, difficulty in closing the laptop lid, malfunctioning of the trackpad or keyboard, and visible gaps between the laptop's components. A bulging battery can also cause the screen to warp or even crack. In more severe cases, users have reported a strong chemical smell emanating from the device, which can be a precursor to an explosion.

24.     In 2019, Apple recalled approximately 432,000 15-inch MacBook Pro laptops sold between September 2015 and February 2017 due to a potential fire hazard.[8] The recall was prompted by 26 reports of battery overheating, including "five reports of minor burns and one report of smoke inhalation, as well as 17 reports of minor damage to nearby personal property."[9]

---

[6] *Id.*
[7] *Id.*
[8] *See* https://www.cpsc.gov/Recalls/2019/Apple-Recalls-15-Inch-MacBook-Pro-Laptop-Computers-Due-to-Fire-Hazard (last accessed October 11, 2024).
[9] *Id.*

**CLASS ACTION COMPLAINT**

This was one of the more significant safety recalls in recent years, underscoring the risks associated with lithium-ion batteries in these devices.

25.     Despite Apple's 2019 recall of certain 15-inch MacBook Pro models due to battery overheating risks, batteries in many Apple laptops, including models such as the MacBook Pro (2017–2019), MacBook Air (2017), and MacBook Pro (2016), as well as batteries in many trackpads, continued to exhibit issues with battery expansion. In some cases, these defects escalated to dangerous situations where the batteries overheated and even exploded.

26.     In April 2020, a 47-year-old female consumer submitted a complaint to the U.S. Consumer Product Safety Commission ("CPSC") regarding a dangerous incident involving her 15.4-inch MacBook Pro (model MC721LL/A).[10] The battery in her laptop, which had been replaced as part of Apple's 2015–2017 recall program, exploded, causing severe damage by blowing out the touchpad and the back of the hard case. Despite contacting Apple for support, she was informed that only laptops with specific serial numbers were eligible for repair, and her device did not qualify. Apple refused to address the issue, citing their inability to verify battery serial numbers and deeming the laptop "obsolete." Consequently, the consumer was denied repair services, even though the defective battery, which had been replaced under the recall, was responsible for the explosion.

27.     Similarly, in February 2022, a 45-year-old consumer reported to the CPSC that their MacBook Pro (Model A1706) caught fire while on a plane.[11] The laptop, which was stored under the seat, began emitting smoke and flames, necessitating the use of a fire extinguisher to control the blaze. The consumer suffered burns and required medical treatment as a result of the incident. The airline documented the event and prepared an official report. Despite the severity of

---

[10] *See* https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1972857 (last accessed October 11, 2024).
[11] *See* https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3609326 (last accessed October 11, 2024).

the incident, the consumer noted that the laptop had not been previously damaged or modified. The following are images of the laptop following the incident:[12]

 

28.     In May 2021, a consumer reported to the CPSC that the battery in their 2017 MacBook Pro (Model A1706), which was only three and a half years old, had swollen to the extent that the laptop lid could no longer close properly.[13] The consumer expressed concern that the swollen battery posed a potential fire hazard if it were to explode, and could also damage other internal components, rendering the laptop inoperable. Despite these concerns, the consumer was informed by Apple that the issue was not a significant safety concern.

29.     In a May 2019 article from appleinsider.com, Amber Neely explained an incident on Reddit, where a user's 2015 MacBook Pro suddenly caught fire during normal use, causing significant damage to their home.[14] In May 2019, the device was on the user's lap and it began emitting smoke and eventually burst into flames. Fortunately, no one was injured. There was no prior indication of battery issues, such as swelling.[15]

30.     Indeed, in May 2023 user "jainvipul999" also reported to Apple that his or her MacBook Pro 13" caught fire without being connected to anything.[16] Similarly, user "ttroyer"

---

[12] *Id.*
[13] *See* https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3321937 (last accessed October 11, 2024).
[14] *See* https://appleinsider.com/articles/19/05/30/macbook-pro-catches-on-fire-demonstrating-potential-danger-of-batteries (last accessed October 11, 2024).
[15] *Id.*
[16] *See* https://discussions.apple.com/thread/254882968?sortBy=rank (last accessed October 11, 2024).

**CLASS ACTION COMPLAINT**

reported as recently as July 6, 2024, that their device "didn't catch fire…yet, but it felt like it was going to burn me through my backpack.," and further noted, "I wish I could find more information about that issue. My MacBookPro scares me!"[17]

31.     Consumers have similar complaints and concerns about the Apple Magic Trackpad.

32.     In September of 2022, a consumer posted in an electronics forum that they "have a Magic Trackpad 2 with a swelling lithium battery," and that "this swelling is a potential fire hazard."[18]

33.     Another consumer noted their "Magic TrackPad 2 Lithium Ion Polymer battery swelled to the point where it detached the bottom polymer (styrene?) plate of the unit!"[19]

34.     On Apple's own forum, in March of this year, a consumer complained about battery swelling in their Apple Magic Trackpad, noting "I've had the Apple trackpad to capture signatures for forms for several iMacs and noticed that the enclosure is separating…Looks to be a black pack inside that is expanding so I believe its the battery?  The unit still functions but I'm concerned that this could be a fire hazard."[20]

35.     Notably, there has been no update to the 2019 recall, nor is there an active recall, for these defective Apple-branded lithium-ion batteries.

36.     Apple has provided no way for consumers to identify which batteries are or could be affected by the defect, therefore, consumers have no reason to stop using their devices until they suffer a failure and/or present a risk of injury.

---

[17] *Id.*
[18] https://www.ifixit.com/Answers/View/747540/I+have+a+Magic+Trackpad+2+with+a+swelling+lithium +battery?srsltid=AfmBOooI5-7P-9_9UlI63tLUWhgGeTvN9SBXtk_oplEz8hSgiTWT79wV (last accessed October 11, 2024).
[19] *Id.*
[20] https://discussions.apple.com/thread/255523887?sortBy=rank (last accessed October 11, 2024).

**CLASS ACTION COMPLAINT**

**Apple Knew About the Defect But Failed to Notify Consumers**

37. Despite the June 2019 recall of certain Apple laptop devices, Apple has continued to advertise and market for sale the Defective Devices and failed to disclose that the Defective Devices contain any defects in its advertising, marketing, or product packaging.

38. Indeed, Apple continues to market and sell the Defective Devices, without disclosure of the defect and safety risks associated with the Defective Devices despite being aware of the defect and safety risks associated with the devices since at least June 2019.

39. Further, Apple regularly monitors consumer complaints submitted to the CPSC. The CPSC also informs manufacturers whenever they receive a complaint about a danger. There are numerous CPSC complaints related to defects in Apple lithium-ion batteries and Apple MacBooks overheating, swelling, and suffering damage:

- An 18-year-old consumer reported that on January 11, 2024, their Apple MacBook Air M1 2020 overheated and melted a plastic table at their home.[21]

- A consumer reported that on August 22, 2023, her Apple MacBook Pro 16" 2019 reaches 104 degrees and is so hot that she cannot hold it in her lap.[22]

- A 51-year-old consumer reported that in September 2020, her Apple MacBook Pro 15" (2012) was swelling, smelled of plastic, smoking, and burned her legs.[23]

- A consumer reported that her 2018 MacBook Pro 15" suffered a swollen lithium-ion battery on June 27, 2021.[24]

- A consumer reported on May 1, 2021, the battery in her 2017 MacBook Pro 13" was swollen to the point it no longer closes.[25]

---

[21] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4572789 (last accessed October 11, 2024).
[22] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4351167 (last accessed October 11, 2024).
[23] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=4121053 (last accessed October 11, 2024).
[24] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3368018 (last accessed October 11, 2024).
[25] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=3321937 (last accessed October 11, 2024).

- A consumer reported that on August 1, 2020, the battery on their MacBook Pro (15-inch, 2016) swelled to the point it ruined the case and keyboard.[26]

- A consumer reported that on October 12, 2020, they contacted Apple about their 2015 MacBook Pro 15" with Retina Display battery that was swollen and bloated, running very hot and not charging properly. The consumer was advised by Apple that their device was not part of the 2019 recall, and that battery swelling is normal.[27]

- A consumer reported that on March 3, 2020, their MacBook Pro (Retina, 15-inch, Mid 2015) would not sit level on a table surface due to a battery swell. The consumer was advised by Apple that their device was not part of the recall program.[28]

40.    The aforementioned examples are just a sample of the voluminous number of the complaints that have been reported to the CPSC regarding issues of battery swelling, battery overheating, and resulting damage to the device and in some instances, injury. These reports have all post-dated the June 2019 recall and include devices that are not included in the June 2019 recall. Thus, Apple is aware of this continuing problem with its lithium-ion batteries and is aware that the June 2019 recall did not include all impacted devices.

41.    Apple is experienced in designing and manufacturing electronic devices containing lithium batteries, such as those in the Defective Devices, for consumer use. Apple knew or should have known of the defect and safety risk with the Defective Devices in other models than those recalled in June 2019, but it decided to not take any affirmative action to remedy the defect, including redesigning and/or recalling the Defective Devices.

42.    Apple thus knew of the defect and its associated malfunction and safety risks but made no substantive modifications to eliminate that defect or to notify consumers of the risk.

43.    Apple unreasonably and unjustly profited from the sale of the Defective Devices and unreasonably put owners and operators at risk of physical and economic injury.

[26] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=2037409 (last accessed October 11, 2024).
[27] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=2036355 (last accessed October 11, 2024).
[28] https://www.saferproducts.gov/PublicSearch/Detail?ReportId=1983323 (last accessed October 11, 2024).

**CLASS ACTION COMPLAINT**

**Plaintiff Sanjay Narayanan**

44.     On or about March 28, 2017, Plaintiff Narayanan purchased a MacBook Pro (Retina 13-inch Early 2015)(Serial No. C02SF42JFVH5) from Amazon. The subject laptop was purchased in new condition and validated through Apple Support.

45.     At no time since the purchase of the subject laptop until the time of the inflation of the battery was a third-party/non-Apple battery installed in the subject laptop. The subject laptop contained the subject lithium battery, rendering it unmerchantable and defective.

46.     Defendant had knowledge of the defect, its propensity to cause damage, and its existence in MacBook laptops before Plaintiff purchased his laptop.

47.     Thereafter, Plaintiff began experiencing problems with his laptop. The laptop was overheating and was swollen, preventing the device from being able to sit flush on a flat surface. In addition, the left speaker was distorted. With a defective battery, Plaintiff's laptop was unsafe to operate, and he took it to the Apple store to determine what could be done to repair the laptop or replace the battery.

48.     Plaintiff took his laptop to the Apple Coconut Point store in Estero, Florida for repair on or around April 7, 2021. There, Apple determined that the device needed repair for the swollen battery and all issues related to the swollen battery. Apple installed a replacement battery (Item No. S8834Z/A). Because the laptop was beyond the warranty period, Apple charged Plaintiff $199.00, (tax not included) for the replacement battery. The replaced battery was also an OEM Apple-branded battery, the same as what was initially installed upon purchase of the laptop.

49.     Again, however, in May 2024, Plaintiff experienced overheating and an expansion issue with this laptop. Again, Plaintiff took his laptop to the Coconut Point Apple store for replacement of the battery. This time, Plaintiff was advised by Apple that because the top case containing the battery, keyboard, and touchpad are all one unit, it needed to be replaced as a whole. Apple also determined that the bottom case was swollen as well. Apple charged Plaintiff $249.00

12

**CLASS ACTION COMPLAINT**

(tax not included) for the replacement battery (Item No. S6791LL/A). The replacement battery was, again, an OEM Apple-branded battery, same as before.

50.    Plaintiff also purchased an Apple Magic brand new from Best Buy. The Apple Magic Trackpad contains a lithium battery like his laptop.

51.    At no time since the purchase of the Apple Magic Trackpad was a third-party/non-Apple battery installed in the device. Further, Plaintiff's Apple Magic Trackpad has not sustained any damage beyond the defective battery.

52.    In or about 2022, Plaintiff's Apple Magic Trackpad began having issues of battery swelling resulting in the device coming apart at the seams. Because of the defect in the device, Plaintiff can no longer use the device as intended and the device fails to function as intended

53.    Plaintiff discovered the defect in these devices in 2024. Prior to that time, no reasonable diligence on the part of Plaintiff Narayanan could have revealed the defect. For these reasons, Plaintiff Narayanan pleads the delayed discovery rule as well as fraudulent and active concealment.

**Plaintiff Roz Saedi**

54.    In or about December 2018, Plaintiff Roz Saedi purchased a MacBook Air, 13.3 inch Intel Core I-5 8-gig Laptop Device.

55.    At no time since the purchase of the subject laptop until the time of the inflation of the battery was a third-party/non-Apple battery installed in the subject laptop. The subject laptop contained the subject lithium battery, rendering it unmerchantable and defective.

56.    Defendant had knowledge of the defect, its propensity to cause damage, and its existence in MacBook laptops before Plaintiff Saedi purchased her laptop.

57.    Over time, Plaintiff Saedi began experiencing problems with her laptop. The laptop was overheating to the point where she could not comfortably or safely use the device. With a defective battery, Plaintiff Saedi's laptop was unsafe to operate, so she purchased an Acer laptop for use.

**CLASS ACTION COMPLAINT**

1

## **CLASS ALLEGATIONS**

2      58.    Pursuant to Federal Rules of Civil Procedure 23(b)(2), (b)(3), and (c)(4), Plaintiffs

3 seeks certification of the following nationwide Class (the "Class" or the "Nationwide Class"):

4
            **Nationwide Class:** All natural persons who purchased, other than for
5                resale, the Defective Devices and who made such purchase in the
                United States for personal, consumer, and/or household use.

6

7 In the alternative, Plaintiffs bring this action on behalf of the following State Sub-Classes:

8
                **Multi-State Class (Implied Warranty Non-Privity) ("Multi-State Implied Warranty Class"):** All persons who purchased
9                the Defective Devices for personal use and not for resale during
                the Class Period in the following States: Alaska; Arkansas;
10               California; Colorado; Connecticut; Delaware; District of
                Columbia; Florida; Hawaii; Indiana; Kansas; Louisiana; Maine;
11               Maryland; Massachusetts; Michigan; Minnesota; Mississippi;
                Missouri; Montana; Nebraska; Nevada; New Hampshire; New
12               Jersey; New Mexico; North Dakota; Ohio; Oklahoma;
                Pennsylvania; Rhode Island; South Carolina; South Dakota;
13               Texas; Utah; Vermont; Virginia; West Virginia; and Wyoming.

14
                **Multi-State Class (Express Warranty) ("Multi-State Express Warranty Class"):** All persons who purchased the
15                Defective Devices for personal use and not for resale during the
                Class Period in the following States: California, Florida,
16               Massachusetts, Michigan, Minnesota, Missouri, New Jersey,
                New York, and Washington.

17

18
          **California Subclass:** All persons who purchased, other than for resale,
19                within California, who purchased the Defective Devices.

20
          **Florida Subclass:** All persons who purchased, other than for resale,
21                within Florida, who purchased the Defective Devices.

22      59.    Excluded from the Classes are (a) any officers, directors or employees, or

23 immediate family members of the officers, directors, or employees of Defendant or any entity in

24 which Defendant has a controlling interest, (b) any legal counsel or employee of legal counsel for

25 Defendant, and (c) the presiding Judge in this lawsuit, as well as the Judge's staff and their

26 immediate family members.

27      60.    The "Class Period" begins on the date established by the Court's determination

28

**CLASS ACTION COMPLAINT**

of any applicable statute of limitations, after consideration of any tolling, discovery, knowing concealment, and accrual issues, and ending on the date of entry of judgment.

61.     Plaintiffs reserve the right to modify or amend the definitions of the proposed Class and/or Subclasses before the Court determines whether certification is appropriate.

62.     The proposed Class meets the criteria for certification under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

63.     **Numerosity**. This action is appropriately suited for a class action. The Class and Subclasses are so numerous and geographically dispersed that joinder of all members would be impracticable. Although the exact number of members is currently unknown, it is believed that the Class and Subclasses consist of thousands of individuals. The members can be identified through objective methods, such as Defendant's records. Notification of the Class and Subclass members regarding the pendency of this action can be effectively achieved through established, Court-approved methods, including U.S. mail, email, internet postings, social media, and/or published notices.

64.     **Predominance of Common Questions of Law and Fact**. This action raises common questions of law and fact that are central to all Class and Subclass members, and these common issues overwhelmingly predominate over any individual differences. The key legal and factual questions shared by all Class members include, but are not limited to:

      a.   Whether the Defective Devices were defective at the time of sale;

      b.   Whether the aforementioned defect significantly diminishes the value of the Defective Devices;

      c.   Whether Apple was aware of the defect but continued to market and sell the Defective Devices without disclosing the defect or its potential consequences to consumers;

      d.   Whether a reasonable consumer would consider the defect and its consequences crucial to their decision to purchase a Defective Device;

      e.   Whether Apple's omissions regarding the Defective Devices were likely to mislead a reasonable consumer;

**CLASS ACTION COMPLAINT**

f. Whether Apple's conduct was unlawful, unfair, and/or fraudulent in violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.;

g. Whether Plaintiff and Class members paid more for their Defective Devices than they would have if the defect had been disclosed;

h. Whether Plaintiff and Class members are entitled to equitable relief, including injunctive relief; and

i. Whether Plaintiff and Class members are entitled to damages or other monetary relief, and if so, the appropriate amount.

65. **Typicality**. Plaintiffs' claims are typical of those of the members of the Class and Subclasses. Defendant's consistent pattern of unlawful conduct, as alleged in this case, has caused Plaintiff and the Class and Subclass members to suffer the same or similar injuries and damages. Moreover, Plaintiffs' claims are typical of those of the members of the Class and Subclasses because Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all members of the Class and Subclasses. In addition, Plaintiffs are entitled to relief under the same causes of action and upon the same facts as all other members of the proposed Class.

66. **Adequacy of Representation**. Plaintiffs will fairly and adequately represent and protect the interests of the Class and Subclasses and has retained competent counsel experienced in complex litigation and class action litigation. Plaintiffs claims arise out of the same common course of conduct giving rise to the claims of the other members of the Class and Subclasses. Plaintiffs have no interests antagonistic to those of the Class or Subclasses, and Defendant has no defenses unique to Plaintiffs.

67. **Insufficiency of Separate Actions**. Absent a class action, Plaintiffs and members of the Class and Subclasses will continue to suffer the harm described herein, for which they would have no remedy. Even if individual consumers could bring separate actions, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated consumers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant.

16
**CLASS ACTION COMPLAINT**

68.     **Injunctive Relief.** Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and all members of the Class and Subclasses, thereby making appropriate final injunctive relief, as described below, concerning the members of the Class and/or Subclasses as a whole. The prosecution of separate actions by individual members of the Class and Subclasses would create a risk of inconsistent or varying adjudication concerning individual members, which would establish incompatible standards of conduct for Defendant. And adjudications of claims of the individual members of the Class and Subclasses against Defendant would, as a practical matter, be dispositive of the interests of other members of the putative Classes who are not parties to the adjudication and may substantially impair or impede the ability of other members to protect their interests.

69.     **Superiority.** A class action is superior to any other available methods for the fair and efficient adjudication of the present controversy for at least the following reasons:

    a.   The damages suffered by each individual member of the Class and Subclasses do not justify the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct;

    b.   Even if individual members of the Class and Subclasses had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed;

    c.   The claims presented in this case predominate over any questions of law or fact affecting individual members of the Class and Subclasses;

    d.   Individual joinder of all members of the Class and Subclasses is impracticable;

    e.   Absent a class action, Plaintiffs and members of the Class and Subclasses will continue to suffer harm as a result of Defendant's unlawful conduct; and

    f.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and members of the Class and Subclasses can seek redress for the harm caused by Defendant.

70.     In the alternative to those claims seeking remedies at law, Plaintiffs and class members allege that no plain, adequate, and complete remedy exists at law to address Defendant's

**CLASS ACTION COMPLAINT**

1   unlawful and unfair business practices. The legal remedies available to Plaintiffs are inadequate

2   because they are not "equally prompt and certain and in other ways efficient" as equitable relief.

3   *American Life Ins. Co. v. Stewart*, 300 U.S. 203, 214 (1937).

4                                          **COUNT I**
                               **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
5   **(On Behalf of the Multi-State Implied Warranty Class and, alternatively, the California
                                    and Florida Sub-Classes)**
6

7            71.      Plaintiffs re-allege and incorporate by reference the preceding allegations as

8   though set forth fully herein.

9            72.      Plaintiffs individual claims are brought under the laws of the State in which he

10  purchased their respective Defective Devices (Florida and California). The claims of absent

11  members of the Multi-State Implied Warranty Class and Florida and California Classes are brought

12  under the state's laws in which they purchased their Defective Devices and identified below:

13                   a.   Alaska Stat. §§ 45.02.314, *et seq.*;

14                   b.   Ark. Code Ann. §§ 4-2-314, *et seq.*;

15                   c.   Cal. Civ. Code §§ 1792, 1791.1, *et seq.* (the "Song-Beverly Act");

16                   d.   Colo. Rev. Stat. Ann. §§ 4-2-314, *et seq.;*
17
                     e.   Conn. Gen. Stat. §§ 42a-2-314, *et seq.;*
18
                     f.   Del. Code Ann. Tit. 6, §§ 2-314, *et seq.*;
19
                     g.   D.C. Code §§ 28:2-314, *et seq.*;
20

21                   h.   Fla. Stat. §§ 672.314, *et seq.*;

22                   i.   Haw. Rev. Stat. §§ 490:2-314, *et seq.*;

23                   j.   Ind. Code §§ 26-1-2-314, *et seq.;*

24                   k.   Kan. Stat. Ann. §§ 84-2-314, *et seq.*;

25                   l.   La. Civ. Code Ann. Art. 2520, *et seq.*;

26                   m.  Md. Code Ann., Com. Law §§ 2-314, *et seq.*;

27                   n.   Me. Rev. Stat. Ann. Tit. 11, §§ 2-314, *et seq.*;
28

**CLASS ACTION COMPLAINT**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

    o.   Mass. Gen. Laws ch. 106, §§ 2-314, *et seq*.;

    p.   Mich. Comp. Laws Ann. §§ 440.2314, *et seq*.;

    q.   Minn. Stat. §§ 336.2-314, *et seq*.;

    r.   Miss. Code Ann. §§ 75-2-314, *et seq*.;

    s.   Mo. Rev. Stat. §§ 400.2-314, *et seq.;*

    t.   Mont. Code Ann. §§ 30-2-314, *et seq*.;

    u.   Neb. Rev. Stat. Ann. §§ 2-314, *et seq*.;

    v.   Nev. Rev. Stat. §§ 104.2314, *et seq*.;

    w.  N.H. Rev. Stat. Ann. §§ 382-A:2-314, *et seq*.;

    x.   N.J. Stat. Ann. §§ 12A:2-314, *et seq*.;

    y.   N.M. Stat. Ann. §§ 55-2-314, *et seq*.;

    z.   N.D. Cent. Code §§ 41-02-31, *et seq*.;

    aa. Ohio Rev. Code Ann. §§ 1302.27, *et seq*.;

    bb. Okla. Stat. Tit. 12A, §§ 2-314, *et seq*.;

    cc. 13 Pa. Stat. Ann. §§ 2314, *et seq*.;

    dd. R.I. Gen. Laws §§ 6A-2-314, *et seq*.;

    ee. S.C. Code Ann. §§ 36-2-314, *et seq*.;

    ff.  S.D. Codified Laws §§ 57A-2-314, *et seq*.;

    gg. Tex. Bus. & Com. Code Ann. §§ 2.314, *et seq*.;

    hh. Utah Code Ann. §§ 70A-2-314, *et seq*.;

    ii.  Va. Code Ann. §§ 8.2-314, *et seq*.;

    jj.  Vt. Stat. Ann. Tit. 9A, §§ 2-314, *et seq*.;

    kk. W. Va. Code §§ 46-2-314, *et seq*.; and

    ll.  Wyo. Stat. Ann. §§ 34.1-2-314, *et seq*.

**CLASS ACTION COMPLAINT**

73.     Defendant manufactured and distributed Defective Devices for sale to Plaintiffs and the Class and Subclass members.

74.     Defendant impliedly warranted to Plaintiffs and members of the Class and Subclasses that their Defective Devices were free of defects and were merchantable and fit for their ordinary purpose for which such goods are used.

75.     As alleged herein, Defendant breached the implied warranty of merchantability because the Defective Devices suffer from a safety defect. The Defective Devices are, therefore, defective, unmerchantable, and unfit for their ordinary, intended purpose.

76.     Due to the safety defect, Plaintiffs and the Class and Subclass members cannot operate their Defective Devices as intended, substantially free from defects. The Defective Devices do not provide safe and reliable function as intended, represented, or described and pose a serious risk of injury. As a result, Plaintiffs and members of the Class and Subclasses cannot use their Defective Devices for the purposes for which they purchased them.

77.     Privity of contract is not required here because Plaintiffs and Class Members were each intended third-party beneficiaries of the Defective Devices sold through independent retailers. The retailers were not intended to be the ultimate consumers of the Defective Devices and have no rights under the implied warranty provided with the Defective Devices.

78.     Plaintiffs did not receive or otherwise have the opportunity to review, at or before the time of sale, any purported warranty exclusions and limitations of remedies.  Accordingly, any such exclusions and limitations of remedies are unconscionable and unenforceable. As a direct and proximate result of the breach of implied warranty of merchantability, Plaintiffs and members of the Class and Subclasses have been injured in an amount to be proven at trial.

## COUNT II
### VIOLATION OF CAL. BUS. & PROF. CODE § 17200, *ET SEQ*. ("UCL")
### (Plaintiffs on behalf of themselves and the California Subclass)

**CLASS ACTION COMPLAINT**

79.     Plaintiffs re-allege and incorporate by reference the preceding allegations as though set forth fully herein.

80.     Plaintiffs asserts this claim individually and on behalf of the California Subclass.

81.     Defendant is a "business" as defined by § 17200.

82.     The UCL prohibits and provides civil remedies for unfair competition. Its purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services. In service of that purpose, the California Legislature framed the UCL's substantive provisions in broad, sweeping language. By defining unfair competition to include "any unlawful, unfair or fraudulent business act or practice," the UCL permits violations of other laws to serve as the basis of an independently actionable unfair competition claim and sweeps within its scope acts and practices not specifically proscribed by any other law.

83.     Defendant's acts and omissions alleged herein, specifically Defendant's violations of the California Legal Remedies Act ("CLRA"), and FLA, constitute unfair competition and/or unlawful, unfair, or fraudulent business practices in violation of the UCL.

84.     Defendant's actions and omissions have violated and continue to violate the "unlawful" prong of the UCL by advertising, marketing and selling defective devices. Additionally, Defendant has engaged in unlawful conduct by violating the CLRA, the Song-Beverly Consumer Warranty Act, and the common law of fraud by omission (as alleged in this Complaint).

85.     As further alleged herein, Defendant's conduct also violates the "deceptive" prong of the UCL in that Defendant's representations that its rechargeable lithium-ion technology provides "the best performance for your device," when Defendant was aware that its lithium-ion batteries were putting users at risk to themselves and their devices, was false and misleading.

86.     Defendant's conduct is "unfair" in contravention of the UCL because it violates California public policy, legislatively declared in both the CLRA and the Song-Beverly Consumer Warranty Act. The CLRA prohibits unfair and deceptive business practices. Defendant violated

the CLRA because it sold Defective Devices as further set forth herein. The Song-Beverly Consumer Warranty Act requires a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. Defendant violated the Song-Beverly Act because the Defective Devices contain a material and unreasonable safety hazard, as set forth herein.

87.    Defendant also acted in an unethical, unscrupulous, outrageous, oppressive, and substantially injurious manner with respect to Plaintiffs and the California Subclass members. Defendant engaged in unfair business practices and acts in at least the following respects:

- Defendant promoted and sold Defective Devices it knew contained a defect that constitutes a material and unreasonable safety hazard to consumers;
- Defendant promoted and sold Defective Devices with the defect despite knowing that users do not expect the devices to be a material and unreasonable safety hazard;
- Defendant made repairs that caused repeated instances of failure and, unbeknownst to consumers, did not provide a permanent fix for the underlying safety hazard defect, thereby maintaining the ongoing threat that consumers could be injured;
- Defendant failed to exercise adequate quality control and due diligence over the Defective Devices before placing them on the market;
- Defendant minimized the scope and severity of the problems with the Defective Devices, refusing to acknowledge that they are defective and failing to provide adequate relief to consumers.

88.    The gravity of harm to Plaintiffs and the California Subclass members resulting from Defendant's unfair conduct outweighs the public utility of Defendant's conduct. The practice of selling Defective Devices that contain an unreasonable safety hazard without providing an adequate remedy to cure the defect—and continuing to sell those Defective Devices without full and fair disclosure of the defect—harms the public at large and is part of a common and uniform course of wrongful conduct.

89.    The harm from Defendant's conduct was not reasonably avoidable by consumers. The Defective Devices suffer from a latent defect at the point of sale, and even after receiving a large volume of consumer complaints, Apple did not disclose or remedy the defect. Plaintiffs did not know of, and had no reasonable means of discovering, that the devices were defective.

**CLASS ACTION COMPLAINT**

90.     There were reasonably available alternatives that would have furthered Defendant's business interests of satisfying and retaining its customers while maintaining profitability, such as: (1) acknowledging the defect and providing a permanent fix for the Defective Devices; (2) adequately disclosing the defect to prospective purchasers; (3) extending the warranty for the Defective Devices; and (4) offering refunds or a suitable non-defective replacement device to consumers with Defective Devices.

91.     Without an injunction, Defendant will continue to harm Plaintiffs, the members of the California Subclass, and prospective consumers. Defendant's sale of Defective Devices is ongoing, and even if it were to stop temporarily, there is a risk of it repeating these deceptive practices.

92.     Defendant's conduct is fraudulent in violation of the UCL because it is likely to deceive a reasonable consumer and:

- Defendant knowingly and intentionally concealed from Plaintiffs and California Subclass members that the Defective Devices contain a latent defect that renders them prone to failure and creates an unreasonable safety hazard that can cause personal injury.

- Defendant volunteered information to Plaintiffs and California Subclass members through advertising and other means that the Defective Devices were functional, premium products without disclosing facts that would have materially qualified those partial representations.

- Defendant promoted the high quality and premium features of the Defective Devices, despite knowing they were defective, and failed to correct its misleading partial disclosures.

- Defendant provided to each consumer and the public a manual that includes a specific section on "Safety and Handling" containing "Important Safety Information" with no disclosures about the propensity of the batteries to overheat, swell, or explode, creating a significant risk of injury. Defendant's statements regarding the safe use of the laptops in the manual applicable to each model constituted partial representations that triggered a duty to disclose additional facts that would have materially qualified these partial representations, including the existence of the defect and resulting unreasonable safety hazard.[29]

93.     Defendant had ample means and opportunities to alert Plaintiffs and California Subclass members of the defective nature of the Defective Devices, including on Apple's product webpages; in its advertisements of the laptops; on the external packaging of the laptops; in the

---

[29] *See* Apple Product Manuals located at: https://support.apple.com/en-us/docs/mac

**CLASS ACTION COMPLAINT**

Apple online purchase portals; in the user manual; and as part of the standardized laptop setup process. Defendant uniformly failed to disclose that the Defective Devices were defective and unsafe. Had Defendant disclosed that the laptops were defective, Plaintiffs and California Subclass members would not have purchased them, would have paid substantially less, or would have returned them during the respective buyer's remorse periods.

94.    Defendant was under a duty to disclose the defect because of its exclusive knowledge of the defect before selling the devices and because the defect resulted in a material and unreasonable safety hazard, and because Defendant made partial representations about the Defective Devices without disclosing the defect.

95.    Defendant's omissions were material. Plaintiffs were exposed to Defendant's specific representations about the Defective Devices before and immediately after purchase and within the time period in which he could have returned their laptops without penalty. Plaintiffs saw the external packaging of the laptop — which Apple developed — before purchasing or using the laptop and during the buyer's remorse period and/or saw and relied on Defendant's representations about the laptop online or in product advertisements, and/or in the online purchase portal, and/or in the user guide, and/or received further information from Defendant about the Defective Device during its setup process. None of the informational sources Plaintiffs or California Subclass Members encountered — advertisements, websites, external packaging, the online purchase portal, the user manual, the setup process, or product launch events — disclosed that the Defective Devices were defective or that they created an unreasonable safety hazard.

96.    Plaintiffs and California Subclass members were unaware of the defect until they experienced it. Had Defendant disclosed the defect, including through advertising, press releases, the product packaging, the online purchase portal, the user manual, or the initial setup process, Plaintiffs and California Subclass members would have been aware of it and would not have purchased the Defective Devices, would have paid substantially less for them, or would have returned them for a refund.

**CLASS ACTION COMPLAINT**

97.     Absent Defendant's unlawful, unfair, and fraudulent conduct, Plaintiffs and California Subclass members, who were all unaware of the defect and the unreasonable safety hazard it caused at the time of purchase, would not have purchased the Defective Devices, would not have purchased them at the prices they did, or would have returned them for a refund during their respective buyer's remorse periods. Defendant omitted material information that it was under a duty to disclose and on which Plaintiffs and the California Subclass members would have relied.

98.     Through its unlawful, unfair, and fraudulent conduct, Defendant acquired Plaintiffs' money directly and as passed on by Apple's authorized resellers. Plaintiffs and California Subclass members suffered injury in fact, including lost money or property, as a result of Defendant's unlawful, unfair, and fraudulent conduct.

99.     Defendant's conduct threatens to cause future harm to Plaintiffs and California Subclass members. Plaintiffs and California Subclass members would purchase Apple laptops in the future if the defect were remedied.

100.     Apple laptops have no comparable product on the market. No other product integrates as seamlessly with other Apple devices, since the Apple laptops are the only such products within the Apple "ecosystem."

101.     Therefore, there is no adequate remedy for Plaintiffs and California Subclass members under the law, and they seek separate injunctive relief including but not limited to an order or judgment enjoining Defendant from making similar misrepresentations and omissions in the future or from continuing its unfair, unlawful, and fraudulent practice.

## COUNT III

### VIOLATIONS OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE §§ 1750, *ET SEQ.*

### (Plaintiffs on behalf of themselves and the California Subclass)

102.     Plaintiffs re-alleges and incorporate by reference the preceding allegations as though set forth fully herein.

103.    Plaintiffs bring this claim individually and on behalf the California Subclass.

104.    Plaintiffs and all California Subclass members are "persons" and "consumers" as defined in Cal. Civ. Code §1761(d).

105.    Under Cal. Civ. Code §§ 1761(c) and 1770, Defendant qualifies as a "person" and provided "goods" as defined by §§ 1761(a) and 1770.

106.    Plaintiffs and the California Subclass's purchases from Defendant constitutes a "transaction" as defined by Cal. Civ. Code §1761(e).

107.    The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer."

108.    As alleged herein, Defendant engaged in unfair acts or practices in violation of Cal. Civ. Code §§ 1770(a)(5), (7), and (9) as they involve unfair and deceptive practices related to the sale of Defective Devices. Specifically, Defendant:

- Misrepresented the Defective Devices by omitting the existence of the battery defect, suggesting that the devices had qualities, uses, and benefits that they did not possess; Cal. Civ. Code §1770(a)(5)

- Misrepresented the quality and standard of the Defective Devices by failing to disclose the battery defect, thereby misleading consumers into believing the devices met a higher quality standard; Cal. Civ Code §1770(a)(7).

- Advertised the Defective Devices with no intention of selling them as described. Cal. Civ. Code §1770(a)(9)

109.    Through the design, development, and pre-release testing of the Defective Devices, as well as through consumer complaints and other information cited in this Complaint, Defendant was aware that these Defective Devices were defective, prone to battery swelling, and at risk of explosion, posing a significant and unreasonable safety hazard to consumers and risk to damage to their electronic devices.

110. Defendant had a duty to disclose the defect in the Defective Devices due to its superior knowledge—gained through research, testing, and consumer feedback—of the battery defect, which presented a material safety risk. Instead, Defendant made partial and misleading statements about the Defective Devices' quality, premium features, and overall safety.

111. Defendant had numerous opportunities to inform Plaintiffs and California Subclass members about the defects, including through advertisements, promotional materials, external packaging, the online purchase portal, User Guides, and during the setup process. Despite having exclusive knowledge of the defect and ample chances to disclose it, Defendant failed to inform Plaintiffs and California Subclass members of the battery defect before purchase, within the buyer's remorse period, or at any time thereafter.

112. Given the serious safety risks posed by the defect, Defendant had an obligation to disclose it even after the warranty period ended.

113. Defendant's omissions were significant. Plaintiffs and the California Subclass were exposed to Defendant's failure to disclose the defect before and immediately after their purchases, during a time when they could have returned the Defective Devices without penalty. Plaintiffs relied on Defendant's omissions and representations about the laptops in advertisements, online, through the purchase portal, and during setup. None of the information sources Plaintiffs consulted—whether advertisements, websites, packaging, User Guides, or during setup—suggested that the devices were defective or that the battery defect posed an unreasonable safety risk.

114. Plaintiffs and California Subclass members were unaware of the defect until they experienced it firsthand. Had Defendant disclosed the defect, whether through advertising, press releases, packaging, the online purchase portal, the User Guide, or the setup process, Plaintiffs and California Subclass members would have known about it and either would not have purchased the Defective Devices, would have paid significantly less for them, or would have returned them for a refund.

**CLASS ACTION COMPLAINT**

115. Defendant's conduct is ongoing and continuous, making prospective injunctive relief necessary, particularly given Plaintiffs' desire to purchase Defendant's products in the future, provided they can be assured that the laptops are safe, function as advertised, and that Defendant complies with relevant advertising and warranty laws.

116. Plaintiffs, whose CLRA claims would otherwise have expired, asserts that these claims are tolled by the delayed discovery rule.

117. Under Cal. Civ. Code § 1782(a), Plaintiff Narayanan, on behalf of himself and the California Subclass, served a CLRA demand via certified mail, return receipt requested on September 5, 2024. Defendant received the CLRA demand notice on September 11, 2024.

118. Defendant has refused or failed to timely respond to the CLRA demand notice. Defendant has failed to provide appropriate relief for its CLRA violations within 30 days of its receipt of Plaintiff's demand notice. Accordingly, pursuant to §1780 and §1782(b) of the CLRA, Plaintiff is entitled to recover actual damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems proper.

119. At this time, Plaintiff Saedi does not bring a claim for damages under the CLRA. Plaintiff Saedi reserves the right to amend her complaint to add damages claims under the CLRA thirty days or longer after compliance with the notice requirements of Cal. Civ. Code §1782(a), should she send such a notice and Defendants fail to meet Plaintiff's demands.

120. Plaintiffs were harmed by Defendant's violations of the CLRA and is entitled to injunctive and declaratory relief, as they lack an adequate remedy at law. Plaintiffs and the California Subclass would consider purchasing Defendant's products in the future if the devices were safe, functioned as advertised, and if the Court compels Defendant to comply with all pertinent advertising and warranty laws.

121. Defendant continues to design, manufacture, and release new versions of MacBook laptops and other devices, often discontinuing older models shortly after new ones are introduced. Without injunctive relief, Plaintiffs and the California Subclass members would be

1  forced to repeatedly file lawsuits to recover their overpayments on future purchases if Defendant

2  is not restrained from continuing its practice of selling devices with the battery defect and failing

3  to warn consumers about it.  Therefore, Plaintiffs seek a permanent injunction to prevent Defendant

4  from engaging in such unlawful practices.

5          122.    Additionally, Plaintiff Narayanan seeks compensation for attorney fees and costs

6  incurred.

7          123.    Finally, under the CLRA, Plaintiffs seeks a public injunction to protect the general

8  public from Defendant's misleading advertising and omissions and from the sale of these Defective

9  Devices.

10                                  **<u>COUNT IV</u>**
                           **UNJUST ENRICHMENT/QUASI-CONTRACT**
11                  **(On Behalf of the Multi-State Implied Warranty Class**
                      **and Class, and the Multi-State Express Warranty**
12                   **Class, and, alternatively, the California and Florida**
                                      **SubClasses)**
13

14         124.    Plaintiffs re-allege and incorporate all preceding factual allegations as set forth

15  fully herein.

16         125.    Plaintiffs' individual claims are brought under the laws of the State in which they

17  purchased their Defective Devices (Florida and California). The claims of absent members of the

18  Multi-State Implied Warranty Class and Sub-class and Multi-State Express Warranty Class and

19  Sub-class are brought under the laws of the State in which they purchased their Defective Device.

20
21         126.    Plaintiffs and Class and Subclass Members conferred a benefit on Defendant

22  when they purchased the Defective Devices, which Defendant knew.

23         127.    Defendant either knew or should have known that the payments rendered by

24  Plaintiffs and the members of the Class and Subclasses were given with the expectation that the

25  Defective Devices would have the qualities, characteristics, and suitability for use represented and

26  warranted by Apple. As such, it would be inequitable for Defendant to retain the benefit of the

27  payments under these circumstances.

28

                                            29
                          **CLASS ACTION COMPLAINT**

128.     By its wrongful acts and omissions described herein, including selling the Defective Devices, which contain both a safety defect described in detail above and which do not safely contain the capacity represented, did not otherwise perform as represented and for the particular purpose for which they were intended, Defendant was unjustly enriched at the expense of Plaintiff and members of the Class and Subclasses.

129.     Plaintiffs' detriment and Defendant's enrichment were related to and flowed from the wrongful conduct challenged in this Complaint.

130.     Defendant has profited from its unlawful, unfair, misleading, and deceptive practices at the expense of Plaintiffs and members of the Class and Subclasses when it would be unjust for Defendant to be permitted to retain the benefit. It would be inequitable for Defendant to retain the profits, benefits, and other compensation obtained from its wrongful conduct described herein in connection with selling the Defective Devices.

131.     Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Defective Devices, which retention of such revenues under these circumstances is unjust and inequitable because Defendant manufactured the Defective Devices, and Defendant misrepresented by omission and suppression the nature of the Defective Devices and knowingly marketed and promoted dangerous and Defective Devices, which caused injuries to Plaintiffs and the members of the Classes and Subclasses because they would not have purchased the Defective Devices based on the exact representations if the true facts concerning the Defective Devices had been known.

132.     Plaintiffs and members of the Class and Subclasses have been damaged as a direct and proximate result of Defendant's unjust enrichment because they would not have purchased the Defective Devices on the same terms or for the same price had they known the true nature of the Defective Devices and the misstatements regarding the Defective Devices characteristics.

133.     Defendant either knew or should have known that payments rendered by Plaintiffs and members of the Class and Subclasses were given and received with the expectation that the Defective Devices would work as represented by Defendant in advertising, on Defendant's websites, and the Defective Devices' labels and packaging. It is inequitable for Defendant to retain the benefit of payments under these circumstances.

134.     Plaintiffs and members of the Class and Subclasses are entitled to recover from Defendant all amounts wrongfully collected and improperly retained by Defendant.

135.     As a direct and proximate result of Defendant's wrongful conduct and unjust enrichment, Plaintiffs and members of the Class and Subclasses are entitled to restitution of, disgorgement of, and/or imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendant for their inequitable and unlawful conduct.

**COUNT V**
**BREACH OF EXPRESS WARRANTIES**
**(On Behalf of Plaintiffs and the Multi-State Express Warranty Class and Subclass or, alternatively, on behalf of the California and Florida Subclasses)**

136.     Plaintiffs repeat and re-allege all preceding factual allegations above as if fully set forth herein.

137.     Defendant provided Plaintiffs and Class and Subclass Members with an express warranty in the form of representations and marketing regarding the safety and utility of its lithium-ion battery powered devices.

138.     Defendant, as the marketers, labelers, distributors, and/or sellers, expressly warranted the representations directed to the Defective Devices.

139.     Plaintiffs formed a contract with Defendant at the time he purchased the Defective Devices. The terms of that contract include the promises and affirmations of fact that Defendant made through an extensive, uniform, nationwide marketing campaign.

**CLASS ACTION COMPLAINT**

Among other affirmations of fact and promises described herein, Defendant represents that the Defective Devices have the qualities the representations proclaim they do.

140.    The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

141.    Defendant's express warranties and their affirmations of act and promises made to Plaintiffs and Class and Subclass Members regarding the Defective Devices became the basis of the bargain between Defendant and Plaintiffs and the Class and Subclass, thereby creating an express warranty that the Defective Devices would confirm to the representations, and the affirmations of fact, representations, promises, and descriptions contemplated therein. These affirmations of fact were material to Plaintiffs and Class and Subclass members' transactions.

142.    Plaintiffs and Class and Subclass members reasonably relied upon Defendant's affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendant's Products.

143.    Where required, Defendant's affirmations of fact and promises were material to Plaintiffs' and Class and Subclass Members' decision to purchase the Defective Devices.

144.    Contrary to Defendant's affirmations of fact and promises, the Defective Devices do not conform to the representations. Defendant breached the express warranties and/or contract obligations by placing the Defective Devices into the stream of commerce and selling the Defective Devices to consumers when the Defective Devices are not safe or reliable for use because a material defect renders them incapable of being used at the capacity advertised in a safe manner.

**CLASS ACTION COMPLAINT**

145.    Defendant made the representations intending that Plaintiffs and Class and Subclass Members would rely on the representations. Plaintiffs and Class and Subclass Members did rely on Defendant's representations when deciding to purchase the Defective Devices.

146.    Defendant received notice by U.S.P.S. Certified Mail from Plaintiffs' counsel related to the claims in this Complaint, specifically Defendant's breaches of its warranties, as described herein via U.S.P.S. Certified Mail on September 5, 2024.

147.    Defendant thereby breached the following state warranty laws:

a.    Cal. Comm. Code § 2313 and § 2607(3)(a);

b.    Fla. Stat. § 672.313;

c.    106 Mass. Gen. Laws Ann. § 2-313;

d.    M.C.L.A. § 440.2313;

e.    Minn. Stat. § 336.2-313;

f.    R.S. Mo. § 400.2-313;

g.    N.J. Stat. Ann. § 12A:2-313;

h.    N.Y. U.C.C. Law § 2-313; and

i.    Wash. Rev. Code Ann. § 6A.2-313;

148.    Defendant breached the express warranty because the Defective Devices cannot be safely used due to the material defect the Defective Devices contain and that was omitted from the marketing of the Defective Devices.

149.    As a direct and proximate result of Defendant's breach of the express warranty, Plaintiffs and Class and Subclass members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**COUNT VI**

**CLASS ACTION COMPLAINT**

**VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT
CAL. CIV. CODE § 1792, *ET SEQ.*
(Plaintiffs on behalf of the California Subclass)**

150.     Plaintiffs repeat and re-allege all preceding factual allegations above as if fully set forth herein.

151.     This claim is brought forth by the Plaintiffs on behalf of the California Subclass.

152.     Plaintiffs qualify as a "buyer" as defined in Cal. Civ. Code § 1791(b). They acquired their Apple laptops in Florida and California, through either the Defendant's website, a physical Apple store, or an authorized reseller within California.

153.     Similarly, the members of the California Subclass also meet the definition of "buyers" under Cal. Civ. Code § 1791(b). These individuals purchased their Defective Devices within California, directly from the Defendant via its website, the Apple Store App, a physical Apple store in California, and/or through one of its authorized resellers.

154.     Defendant is categorized as a "manufacturer" in accordance with Cal. Civ. Code § 1791(j). Defendant was responsible for the production of the Defective Devices and oversaw and participated in every phase of the production and manufacturing process.

155.     The Defective Devices in question fall under the category of "consumer goods" as defined in Cal. Civ. Code § 1791(a).

156.     The protections of the Song-Beverly Consumer Warranty Act extend to the California Subclass.

157.     Defendant implicitly guaranteed to Plaintiffs and the California Subclass that each Defective Device purchased was "merchantable," per Cal. Civ. Code §§ 1791.1 and 1792.

**CLASS ACTION COMPLAINT**

158.     Defendant breached this implied warranty of merchantability by producing, manufacturing, and selling Defective Devices that were not of merchantable quality. These devices are defective and present an unreasonable safety risk, leading to their destruction, operational failure, and/or causing personal injuries. As a result, the Defective Devices are unsuitable for their intended purposes and would not be acceptable in the computer and electronics market.

159.     The defect in these devices is latent. Although they initially appear functional when new, the defect was present at the time of sale and persisted throughout the one-year warranty period (or two years for certain models). Therefore, discovering the defect later does not invalidate an implied warranty claim under the Song-Beverly Act. Moreover, despite reasonable efforts by Plaintiffs and the California Subclass, they could not have reasonably discovered the issue as it was undetectable, and Defendant failed to disclose or actively concealed it, as detailed in this Complaint.

160.     Any attempt by Defendant to disclaim its implied warranty obligations under the Song-Beverly Act is void due to its non-compliance with Cal. Civ. Code §§ 1792.3 and 1792.4. These sections mandate that, to validly disclaim the implied warranty of merchantability, a manufacturer must clearly state: "(1) The goods are being sold on an 'as is' or 'with all faults' basis; (2) The entire risk as to the quality and performance of the goods is with the buyer; (3) Should the goods prove defective following their purchase, the buyer and not the manufacturer, distributor, or retailer assumes the entire cost of all necessary servicing or repair." Defendant's attempted warranty disclaimer does not meet the requirements of §§ 1792.3 and 1792.4.

161.    Plaintiffs, whose Song-Beverly Act claims would have otherwise expired, asserts that these claims are tolled due to the doctrine of fraudulent concealment.

162.    As a direct and proximate result of Defendant's breaches of the Song-Beverly Consumer Warranty Act, Plaintiffs and the California Subclass have suffered damages, the amount of which will be determined at trial.

163.    The Plaintiffs and the California Subclass seek reimbursement for costs and expenses, including reasonable attorneys' fees, as provided under Cal. Civ. Code § 1794.

**COUNT VIII**
**FRAUD BY OMISSION**
**(Plaintiffs on behalf of the Class, or alternatively, California and Florida Subclasses)**

164.    Plaintiffs repeat and re-allege all preceding factual allegations above as if fully set forth herein.

165.    This claim is brought forth by Plaintiffs on behalf of the Class, or alternatively, on behalf of the California Subclass, also under California law.

166.    Defendant engaged in a pattern of intentional concealment, withholding crucial facts about the quality and safety of the Defective Devices. As detailed earlier, Defendant knew of the flaws and hazards associated with these devices before Plaintiffs and Class members bought them. Despite knowledge of numerous consumer complaints, warranty claims, and other issues related to the battery defect, Defendant opted to hide this information. This led to property damage and exposed Plaintiffs and Class members to an unreasonable safety risk.

167.    The latent and unobservable nature of the battery defect means it only becomes apparent after manifestation. Thus, Plaintiffs and Class members had no reasonable way to discern that Defendant's representations about the Defective Devices

36
**CLASS ACTION COMPLAINT**

were incomplete or misleading, or that critical defect information was withheld. Only post-purchase, or even beyond buyer's remorse periods, could Plaintiffs and Class members reasonably uncover Defendant's deceptive practices.

168.    Had Plaintiffs and Class members known about Defective Devices' defective nature, their buying decisions would have drastically differed. They would have either refrained from buying, negotiated a significantly lower price, or exercised their return rights.

169.    Defendant had a clear duty to disclose the defect to Plaintiffs, Class members, and the public. This stemmed from both the material and unreasonable safety hazard the defect posed and Defendant's exclusive knowledge of the battery defect. Defendant's pre-release and component testing either revealed or should have revealed the defect before market release of the Defective Products. Only Defendant had access to and knowledge of these test results.

170.    Furthermore, Defendant's active promotion of the Defective Devices amplified its duty to disclose. Through advertising, press releases, product launch statements, webpage and packaging info, the online purchase portal, the User Guide, the setup process, and other pre-purchase touchpoints, Defendant presented an incomplete picture. While touting supposed safety, high quality, and premium features, Defendant omitted facts materially altering these representations, notably the battery defect and safety hazard. Having volunteered information, Defendant was obligated to provide the complete truth, including the defective batteries.

171.    Plaintiffs encountered Defendant's carefully crafted representations regarding the Defective Devices before, during, and immediately after purchase, including

within the return window. He interacted with packaging, viewed online representations, saw product ads, navigated the online purchase portal, and received further setup information. None hinted at the defect. Had Defendant been transparent, Plaintiffs would have known.

172.    Defendant's motive for concealment was clear: boosting sales of the Defective Devices at a premium, safeguarding its brand, and avoiding the financial burden of a permanent solution, plus repair, replacement, and warranty refund costs.

173.    The concealed battery defects were undeniably material to any reasonable consumer. Plaintiffs and Class members remained unaware until personally experiencing the defect. Had Defendant been upfront through any communication channel—advertising, press releases, packaging, the online purchase portal, or initial setup—Plaintiffs and Class members would have made informed decisions, either not purchasing, paying substantially less, or promptly returning the Defective Devices.

174.    Plaintiffs and Class members justifiably relied on Defendant's representations when buying the Defective Devices. This reliance, coupled with Defendant's material omissions on quality, safety, and defects, caused their detriment.

175.    Defendant's deceit and fraudulent concealment directly and proximately caused damages to Plaintiffs and Class members. These include the lost value from the premium price paid.

176.    Defendant's fraudulent omission was negligent, malicious, oppressive, and deliberate, aiming to defraud Plaintiffs and Class members for financial gain. This showed reckless disregard for their rights, interests, and well-being. Thus, Defendant's

**CLASS ACTION COMPLAINT**

1  actions warrant punitive damages to deter future such behavior, the amount to be

2  determined by evidence.

3      177.    Plaintiffs, whose fraudulent omission claims would otherwise be time-

4  barred, asserts the delayed discovery rule tolls these claims.

5                          **PRAYER FOR RELIEF**

6           **WHEREFORE**, Plaintiffs, on behalf of themselves and all others
           similarly situated, respectfully requests that the Court enter judgment against

7  Defendant in the form of an Order:

8      A.    Certifying this action as a class action under Rule 23(b)(2) and (b)(3) of the Federal

9  Rules of Civil Procedure and naming Plaintiffs as a representative of the Class and Subclasses

10  Plaintiffs' undersigned attorneys as Class Counsel to represent the Class Members;

11      B.    Declaring that Defendant's conduct violated the laws referenced herein;

12      C.    Finding in favor of Plaintiffs and the Class and Subclass on all counts asserted

13  herein;

14      D.    Awarding actual, consequential, punitive, statutory, and treble damages as

15  applicable;

16      E.    Awarding pre-judgment and post-judgment interest on all amounts awarded;

17      F.    For injunctive relief as pleaded or as the Court may deem proper;

18      G.    For disgorgement and restitution to Plaintiffs and the Class and/or Subclass

19  members of all monies received or collected from Plaintiffs and the Class and/or Subclass members

20  and all other forms of equitable relief;

21      H.    Awarding Plaintiffs and the Class and Subclass reasonable attorneys' fees and

22  expenses and costs of suit;

23      I.    Awarding damages in an amount to be determined at trial; and

24      J.    For such other and further relief as the Court may deem proper.

25                          **DEMAND FOR JURY TRIAL**

26      Plaintiffs hereby demands trial by jury as to all triable issues.

27

28
                                39
                    **CLASS ACTION COMPLAINT**

1

2  Dated: October 18, 2024                    Respectfully submitted,

3                                             By: */s/ Kyle McLean*
                                              Kyle McLean (SBN 6344126)
4                                             Lisa R. Considine (*pro hac vice* forthcoming)
                                              Leslie Pescia (*pro hac vice* forthcoming)
5                                             745 Fifth Ave, Suite 500
                                              New York, NY 10151
6                                             Telephone: 212-532-1091
                                              Facsimile: 646-417-5967
7                                             Email : kmclean@sirillp.com
                                              Email: lconsidine@sirillp.com
8                                             Email: lpescia@sirillp.com

9

10                                            *Attorneys for Plaintiff and the Proposed Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLASS ACTION COMPLAINT**