1  CHRISTOPHER CHORBA, SBN 216692
      cchorba@gibsondunn.com
2  JILLIAN LONDON, SBN 319924
      jlondon@gibsondunn.com
3  GIBSON, DUNN & CRUTCHER LLP
   333 South Grand Avenue
4  Los Angeles, CA  90071-3197
   Telephone:    213.229.7000
5  Facsimile:    213.229.7520

6  DAVID CASAZZA (*pro hac vice forthcoming*)
      dcasazza@gibsondunn.com
7  GIBSON, DUNN & CRUTCHER LLP
   1700 M St., N.W.
8  Washington, D.C. 20036
   Telephone:    202.955.8500
9  Facsimile:    202.467.0539

10  *Attorneys for Defendant Apple Inc.*

11

12              **UNITED STATES DISTRICT COURT**

13            **NORTHERN DISTRICT OF CALIFORNIA**

14                  **SAN JOSE DIVISION**

15  SANJAY NARAYANAN and ROZ          Case No. 5:24-cv-07286-EJD
    SAEDI, on behalf of themselves and all
16  others similarly situated,         **DEFENDANT APPLE INC.'S NOTICE OF**
                                        **MOTION AND MOTION TO DISMISS**
17             Plaintiffs,              **PLAINTIFFS' COMPLAINT**

18        v.

19  APPLE INC.,                        Judge:        Hon. Edward J. Davila
                                        Courtroom:    4, 5th Floor
20             Defendant.              Hearing Date: March 20, 2025
                                        Hearing Time: 9 AM.

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on March 20, 2025, at 9 AM, or as soon thereafter as the matter may be heard before the Honorable Edward J. Davila, in Courtroom 4, 5th Floor, of the United States District Court for the Northern District of California in the San Jose Courthouse, 280 South 1st Street, San Jose, CA 95113, Defendant Apple Inc. will, and hereby does, move this Court, pursuant to Federal Rules of Civil Procedure 8(a), 9(b), and 12(b)(6), for an order dismissing Plaintiffs' Complaint on several grounds:

*First*, Plaintiffs' Complaint does not satisfy Rules 8 and 9(b) of the Federal Rules of Civil Procedure. Apart from a few conclusory assertions about their own devices, Plaintiffs' Complaint largely relies upon allegations involving problems that other purchasers claimed to experience. But these allegations are no more than selective quotations from anonymous Internet posts that do not plausibly establish that *Plaintiffs* experienced battery issues with their devices. The Complaint's allegations about misrepresentations or omissions do not meet Rule 9(b)'s demands because they identify no specific statements or any facts to establish any reasonable reliance on those statements. Because Plaintiffs' conclusory allegations do not state a plausible basis for relief under Rule 8—let alone meet the heightened pleading standards that Rule 9(b) imposes on fraud-based claims—the Court should dismiss the Complaint in its entirety.

*Second*, Plaintiffs' claims are untimely. The relevant limitations period of each claim is, at most, five years. Plaintiffs allegedly purchased their devices in 2017 and 2018, and they had a more than adequate opportunity to discover the purported "defects" with their devices. Plaintiffs' Complaint theorizes that the June 2019 recall of a limited set of one line of Apple portables constitutes proof of an undisclosed "defect" in many other portable devices and Magic Trackpads—including Plaintiffs' own products—and that Apple was "aware of the defect … since at least June 2019." (Compl. ¶ 38.) While Apple disputes that the limited 2019 recall is evidence of any broader battery-related issues in other devices, by Plaintiffs' own theory, the recall put them on notice of alleged battery-related "defects" with their own devices. Therefore, under their own theory of the case, Plaintiffs cannot invoke the delayed discovery rule, and their claims are time-barred.

*Third*, Plaintiffs' claims suffer from several other legal defects that justify dismissal. As for their warranty claims: (a) Apple's express warranties preclude these claims; (b) Plaintiffs do not allege "defects" that render the devices "unmerchantable"; and (c) Plaintiffs do not allege the retail sale in California required by the Song-Beverly Act. Next, their claims sounding in fraud under the common law, the Unfair Competition Law, and the Consumers Legal Remedies Act fail as a matter of law because they do not allege (i) an actionable misrepresentation or omission (or a duty to disclose), or the related reliance; (ii) the "unlawful" or "unfair" conduct that could underpin a UCL claim; and (iii) other necessary prerequisites for their California consumer protection statute claims.

*Fourth*, Plaintiffs cannot pursue their equitable claims or seek equitable relief because they do not and cannot allege that legal remedies are inadequate to remedy their alleged injuries. Further, the unjust enrichment claims are impermissibly duplicative of their statutory and tort claims.

*Finally*, Plaintiffs' efforts to certify nationwide and multi-state classes are impermissibly overbroad. Plaintiffs' class definition includes an unknown range of dissimilar Apple products that neither Mr. Narayanan nor Ms. Saedi purchased. Plaintiffs also seek to invoke dozens of states' laws, even in jurisdictions where neither of them resides. Plaintiffs cannot assert violations of state statutes that do not govern their claims and are materially distinct. At a minimum, therefore, the Court should dismiss all claims relating to devices other than those Mr. Narayanan and Ms. Saedi allege they purchased, as well as claims for breaches of state laws other than those of California or Florida (where they reside).

Defendant's Motion is based on this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the accompanying Request for Judicial Notice and Declaration of Christopher Chorba, all other documents on file in this action, and any oral argument of counsel.

DATED: January 14, 2025                    GIBSON, DUNN & CRUTCHER LLP


                                           By:      /s/ *Christopher Chorba*
                                                      Christopher Chorba

                                           *Attorneys for Defendant Apple Inc.*

# TABLE OF CONTENTS

I.     INTRODUCTION AND SUMMARY OF ARGUMENT ....................................... 1

II.    STATEMENT OF ISSUES TO BE DECIDED ................................................ 3

III.   SUMMARY OF FACTUAL ALLEGATIONS ................................................... 3

IV.    LEGAL STANDARD .................................................................................... 6

V.     ARGUMENT ................................................................................................ 6

       A.    Plaintiffs' Generalized Claims About Battery "Defects" Do Not Satisfy
             Rules 8 and 9 Because They Lack Specific Details About Their Own Devices .......... 6

       B.    The Statutes of Limitation Bar All of Plaintiffs' Claims ................................ 9

       C.    The Court Should Dismiss Plaintiffs' Warranty Claims ............................... 11

             1.    *Plaintiffs Cannot State Their Implied Warranty and Song-Berverly
                   Act Claims (Counts I and VI).* ....................................................... 11

             2.    *Plaintiffs Also Do Not State an Express Warranty Claim (Count V).* ......... 15

       D.    The Consumer Protection and Fraud Claims (Counts II–III, VIII) Should Be
             Dismissed .................................................................................................. 17

             1.    *Plaintiffs Do Not Allege a Misrepresentation or Reliance.* ............................ 17

             2.    *Plaintiffs Do Not Allege an Actionable Omission or Reliance.* ..................... 18

             3.    *Plaintiffs' Fraud-Based Theories Fail for Additional Reasons.* .................... 21

       E.    Plaintiffs Do Not Meet the Requirements to Seek Equitable Relief .......................... 22

             1.    *Plaintiffs Have an Adequate Remedy at Law.* ................................................. 23

             2.    *The Unjust Enrichment Claim Is Duplicative and Should Be Dismissed
                   (Count IV).* ................................................................................................ 24

       F.    Plaintiffs Cannot Bring Claims on Behalf of Nonresidents or Purchasers of
             Other Devices ............................................................................................. 24

VI.    CONCLUSION ............................................................................................ 25

Gibson, Dunn &
Crutcher LLP

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Ahern v. Apple Inc.*,
   411 F. Supp. 3d 541 (N.D. Cal. 2019) ........................................................................................21

*Alvarez v. Chevron Corp.*,
   656 F.3d 925 (9th Cir. 2011)........................................................................................................16

*Am. Suzuki Motor Corp. v. Sup. Ct.*,
   37 Cal. App. 4th 1291 (1995) ......................................................................................................13

*In re Apple Inc. Device Perf. Litig.*,
   386 F. Supp. 3d 1155 (N.D. Cal. 2019) ...........................................................6, 8, 16, 18, 19, 20

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)........................................................................................................6, 14, 24

*Baba v. Hewlett-Packard Co.*,
   No. 09-5946-RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011).....................................................21

*Baltazar v. Apple Inc.*,
   No. 10-3231-JF, 2011 WL 3795013 (N.D. Cal. Aug. 26, 2011) ..................................................15

*Berenblat v. Apple Inc.*,
   Nos. 08-4969-JF, et al., 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010)....................................13, 21

*Birdsong v. Apple Inc.*,
   590 F.3d 955 (9th Cir. 2009)..........................................................................................13, 14, 19

*Carboni v. Arrospido*,
   2 Cal. App. 4th 76 (1991) ............................................................................................................13

*Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*,
   169 Cal. App. 4th 116 (2008) ................................................................................................16, 17

*Cho v. Hyundai Motor Co.*,
   636 F. Supp. 3d 1149 (C.D. Cal. 2022) ..................................................................................20, 21

*Collins v. eMachines, Inc.*,
   202 Cal. App. 4th 249 (2011) ......................................................................................................18

*Crittenden v. Apple Inc.* ("*Crittenden I*"),
   No. 21-4322-EJD, 2022 WL 2132224 (N.D. Cal. June 14, 2022)..........................................7, 8, 9

*Crittenden v. Apple Inc.* ("*Crittenden II*"),
   No. 21-4322-EJD, 2023 WL 6149895 (N.D. Cal. Sept. 19, 2023).................................................6

*E. Airlines, Inc. v. McDonnell Douglas Corp.*,
   532 F.2d 957 (5th Cir. 1976)........................................................................................................16

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014)....................................................................................................6, 24

Gibson, Dunn & Crutcher LLP

*Elias v. Hewlett-Packard Co.*,
    903 F. Supp. 2d 843 (N.D. Cal. 2012) ........................................................................17

*In re Facebook PPC Advert. Litig.*,
    709 F. Supp. 2d 762 (N.D. Cal. 2010) .......................................................................23

*Flatirons Bank v. Alan W. Steinberg Ltd. P'ship*,
    233 So. 3d 1207 (Fla. Dist. Ct. App. 2017) ...............................................................10

*Fox v. Ethicon Endo-Surgery, Inc.*,
    35 Cal. 4th 797 (2005) ...............................................................................................10

*Garcia v. Sony Computer Entm't Am. LLC*,
    859 F. Supp. 2d 1056 (N.D. Cal. 2012) .................................................................17, 18

*Gen. Matters, Inc. v. Paramount Canning Co.*,
    382 So. 2d 1262 (Fla. Dist. Ct. App. 1980) ...........................................................16, 17

*Gomez v. Jelly Belly Candy Co.*,
    No. 17-575-CJC, 2017 WL 8941167 (C.D. Cal. Aug. 18, 2017) .................................23

*Gonzalez v. Planned Parenthood of L.A.*,
    759 F.3d 1112 (9th Cir. 2014) ......................................................................................6

*Granfield v. NVIDIA Corp.*,
    No. 11-5403-JW, 2012 WL 2847575 (N.D. Cal. July 11, 2012) ............................22, 25

*Hadley v. Kellogg Sales Co.*,
    243 F. Supp. 3d 1074 (N.D. Cal. 2017) ......................................................................22

*Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am.*,
    576 So. 2d 1330 (Fla. Dist. Ct. App. 1991) ...............................................................17

*Hendricks v. StarKist Co.*,
    30 F. Supp. 3d 917 (N.D. Cal. 2014) ..........................................................................24

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009).................................................................................6, 7

*Leonhart v. Nature's Path Foods, Inc.*,
    No. 13-492-EJD, 2014 WL 1338161 (N.D. Cal. Mar. 31, 2014) .................................24

*In re MacBook Keyboard Litig.*,
    No. 18-2813-EJD, 2020 WL 6047253 (N.D. Cal. Oct. 13, 2020) .................................23

*Maneely v. Gen. Motors Corp.*,
    108 F.3d 1176 (9th Cir. 1997).....................................................................................15

*Mazza v. Am. Honda Motor Co.*,
    666 F.3d 581 (9th Cir. 2012).......................................................................................25

*McGill v. Ford Motor Co.*,
    No. 24-01084-JST, 2024 WL 2941632 (N.D. Cal. June 11, 2024) ..............................16

*Minkler v. Apple Inc.*,
    65 F. Supp. 3d 810 (N.D. Cal. 2014) ..........................................................................12

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 5:24-cv-07286-EJD

*Mocek v. Alfa Leisure, Inc.*,
    114 Cal. App. 4th 402 (2003) ......................................................................................... 13

*Moran v. Healthcare Mgmt., Inc.*,
    3 Cal. App. 5th 1131 (2016) .......................................................................................... 18

*Moss v. Infinity Ins. Co.*,
    197 F. Supp. 3d 1191 (N.D. Cal. 2016) ....................................................................... 23

*Mullins v. Premier Nutrition Corp.*,
    No. 13-1271-RS, 2018 WL 510139 (N.D. Cal. Jan. 23, 2018) ..................................... 23

*Murphy v. Courtesy Ford, L.L.C.*,
    944 So. 2d 1131 (Fla. Dist. Ct. App. 2006) .................................................................. 13

*Nationwide Biweekly Admin., Inc. v. Sup. Ct. of Alameda Cty.*,
    9 Cal. 5th 279 (2020) ................................................................................................... 23

*In re Nexus 6P Prods. Liab. Litig.*,
    293 F. Supp. 3d 888 (N.D. Cal. 2018) ......................................................................... 14

*Pascal v. Nissan N. Am., Inc.*,
    No. 20-492, 2022 WL 2784393 (C.D. Cal. June 8, 2022) ............................................ 20

*R.A. Jones & Sons Inc. v. Holman*,
    470 So. 2d 60 (Fla. Dist. Ct. App. 1985) ...................................................................... 10

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ....................................................................... 18

*Rose v. ADT Sec. Servs. Inc.*,
    989 So. 2d 1244 (Fla. Dist. Ct. App. 2008) .................................................................. 12

*Sanchez v. Nurture, Inc.*,
    626 F. Supp. 3d 1107 (N.D. Cal. 2022) ....................................................................... 25

*In re SanDisk SSDs Litig.*,
    No. 23-04152-RFL, 2024 WL 3422597 (N.D. Cal. June 5, 2024) ............................... 14

*Smith v. Apple Inc.*,
    No. 21-09527-HSG, 2023 WL 2095914 (N.D. Cal. Feb. 17, 2023)............................. 12

*Smith v. Ford Motor Co.*,
    749 F. Supp. 2d 980 (N.D. Cal. 2010) ......................................................................... 19

*Sonner v. Premier Nutrition Corp.*,
    971 F.3d 834 (9th Cir. 2020)......................................................................................... 23

*Speier-Roche v. Volkswagen Grp. of Am. Inc.*,
    No. 14-20104-CIV, 2014 WL 1745050 (S.D. Fla. Apr. 30, 2014)............................... 12

*Sponchiado v. Apple Inc.*,
    No. 18-7533-HSG, 2019 WL 6117482 (N.D. Cal. Nov. 18, 2019)............................. 22

*Stark v. Patreon, Inc.*,
    656 F. Supp. 3d 1018 (N.D. Cal. 2023) ..................................................................... 7, 9

Gibson, Dunn &
Crutcher LLP

*Stewart v. Electrolux Home Prods., Inc.*,
  No. 17-1213, 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) ........................................................20

*Tabak v. Apple Inc.*,
  No. 19-02455-JST, 2020 WL 9066153 (N.D. Cal. Jan. 30, 2020) ...........................................12, 13

*Taleshpour v. Apple Inc.*,
  549 F. Supp. 3d 1033 (N.D. Cal. 2021) ...............................................................................19, 20

*Tan v. GrubHub, Inc.*,
  171 F. Supp. 3d 998 (N.D. Cal. 2016) ..........................................................................................22

*Volk v. D.A. Davidson & Co.*,
  816 F.2d 1406 (9th Cir. 1987)........................................................................................................11

*Watkins v. MGA Entm't, Inc.* ("*Watkins I*"),
  550 F. Supp. 3d 815 (N.D. Cal. July 26, 2021)..........................................................15, 17, 21, 22

*Watkins v. MGA Entm't, Inc.* ("*Watkins II*"),
  574 F. Supp. 3d 747 (N.D. Cal. Dec. 10, 2021)..............................................................................6

*Webb v. Special Elec. Co.*,
  63 Cal. 4th 167 (2016) ...................................................................................................................16

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021)..........................................................................................................7

*Williams v. Apple Inc.*,
  No. 19-4700-LHK, 2020 WL 6743911 (N.D. Cal. Nov. 17, 2020)................................................23

*Williams v. Yamaha Motor Co.*,
  851 F.3d 1015 (9th Cir. 2017)........................................................................................................19

*Wilson v. Hewlett-Packard Co.*,
  668 F.3d 1136 (9th Cir. 2012)..................................................................................................19, 21

*Yastrab v. Apple Inc.*,
  No. 15-1974-EJD, 2015 WL 1307163 (N.D. Cal. Mar. 23, 2015) ..................................6, 7, 17, 22

*In re ZF-TWY Airbag Control Units Prods. Liab. Litig.*,
  601 F. Supp. 3d 625 (C.D. Cal. 2022) ....................................................................................11, 13

**Statutes**

Cal. Bus. & Prof. Code § 17208 .........................................................................................................9

Cal. Civ. Code § 1783 .........................................................................................................................9

Cal. Civ. Code § 1792 .......................................................................................................................14

Cal. Civ. Proc. Code § 338(d) .............................................................................................................9

Cal. Civ. Proc. Code § 339(1) .............................................................................................................9

Cal. Com. Code § 2313 .....................................................................................................................15

Cal. Com. Code § 2316(2) ................................................................................................12

Cal. Com. Code § 2607(3) ................................................................................................16

Cal. Com. Code § 2725 ......................................................................................................9

Fla. Stat. § 95.11(2)(b) ......................................................................................................9

Fla. Stat. § 95.11(3)(i) ......................................................................................................9

Fla. Stat. § 95.11(3)(j) ......................................................................................................9

Fla. Stat. § 95.11(3)(k) ......................................................................................................9

Fla. Stat. § 672.316 ..........................................................................................................12

Fla. Stat. § 672.607(3)(a) ................................................................................................16

**Rules**

Fed. R. Civ. P. 8 .............................................................................................2, 3, 6, 7, 8, 9

Fed. R. Civ. P. 9(b) ...............................................................2, 3, 6, 7, 8, 9, 11, 17, 19, 21

Fed. R. Evid. 201(b).............................................................................................................8

Gibson, Dunn & Crutcher LLP

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 5:24-cv-07286-EJD

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Lacking specific, plausible factual allegations, Plaintiffs assert that a sweeping array of Apple portable computers and Magic Trackpad accessories suffer from inherent battery "defects." There is no merit to Plaintiffs' allegations. Apple takes industry-leading safety and reliability precautions to ensure that its products meet the highest standards, and its products have an unrivaled record of reliability and durability. The company is proud of this record, and very serious about maintaining it. If any real, systemic issue is detected, Apple immediately addresses it—as demonstrated by a voluntary recall in 2019 of the batteries in a limited subset of an older generation 15-inch MacBook Pro device, which contained a limited run of batteries with the potential to overheat and pose a safety risk.

Plaintiffs Sanjay Narayanan and Roz Saedi do not own devices that were subjected to that recall. Instead, they purchased different Apple portable computers and a Magic Trackpad in 2017 and 2018, respectively, which are allegedly "connected" to the limited recall only because those devices also contain lithium-ion batteries. This lawsuit thus attempts to base a nationwide class action on generalized complaints about *all* lithium-ion batteries. As this Court is well aware from previous matters, lithium-ion batteries naturally degrade over time. Plaintiffs' broad and unspecified assertions that *all* lithium-ion batteries in an unidentified range of MacBook Pro devices, Magic Trackpads, and MacBook Air devices suffer from "defects" are legally insufficient to state the claims Plaintiffs seek to assert. While Plaintiffs claim these devices experienced battery-related issues, they do not allege critical details, including *when* the alleged malfunctions occurred, let alone which specific devices beyond their own are at issue. What few details Plaintiffs include serve only to demonstrate that their devices met the expectations in Apple's warranty and that their claims are untimely.

Plaintiffs attempt to piggyback on Apple's voluntary, limited 2019 recall of batteries in a subset of an older 15-inch MacBook Pro model as evidence of a "defect" that supposedly affected a broad range of device series spanning an unknown period of years. But Plaintiffs' attempt to capitalize on this limited, voluntary recall of a select set of devices that occurred more than five years ago is no substitute for particularized allegations to support their sweeping claims about *different* products. And Plaintiffs' attempt to rely on anonymous, cherry-picked Internet postings about other devices fares no

better.  The Complaint suffers from multiple legal defects and should be dismissed for several reasons:

*First*, the Complaint falls short of the requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure.  Specifically, Plaintiffs do not identify the "who," "what," "when," "where," and "how" of the alleged misconduct that forms the basis of each claim.  While Plaintiffs allege their dates of purchase for two of the devices, there are no allegations about *when* the alleged "defects" in those devices first arose.  For the third device, Plaintiffs purport to identify when the "defect" arose but do not allege when it was purchased.  As to the purported "defects," Plaintiffs assert generally that the devices "overheated" and "swelled," claiming without any further detail or support that these purported and undisclosed "defects" left them unable to "comfortably or safely use the device."  They do not describe any safety-related incidents, and only one of them offers even a generalized assertion that a "safety" issue existed.  Plaintiffs cannot simply incant "safety issue" and bypass their warranties; more is required to plead omission-based claims.

*Second*, accepting Plaintiffs' allegations as true only confirms that their claims, which are based on purchases in 2017 and 2018, are untimely.  The relevant limitations period for each claim runs from one to five years, but the most recent purchase identified in the Complaint occurred nearly ***six years*** before filing.  While Plaintiffs invoke the discovery rule to excuse their untimeliness, under their own theory of the case—that the limited 2019 recall of a limited subset of the batteries in another portable computer somehow confirms problems with a swath of other Apple products—Plaintiffs knew or should have known about their purported claims years ago.

*Third*, the warranty and consumer protection claims suffer from a number of other legal defects: (a) the terms of Apple's warranty precludes their warranty claims; (b) Plaintiffs do not adequately allege that their devices were "unmerchantable"; (c) Plaintiffs cannot show that Apple had a duty to disclose the alleged "defects"; (d) Plaintiffs do not allege the misrepresentation or reliance required for their fraud claims; and (e) Plaintiffs cannot plausibly contend that Apple's conduct was "unlawful," "unfair," or "fraudulent," defeating their statutory claims.

*Fourth*, Plaintiffs cannot pursue equitable claims or seek equitable relief (restitution and injunctive relief) because they do not (and cannot) allege that their legal remedies are inadequate.

*Fifth*, Plaintiffs impermissibly seek to certify nationwide and multi-state classes invoking state

laws applicable to none of their individual claims, and including devices that neither purchased.

Apple vigorously disputes that there are any "defects" in the batteries of its MacBook Pro or MacBook Air devices, the Magic Trackpad, or other such devices. But setting aside this faulty premise, the claims are legally deficient and cannot endure the scrutiny required under the Federal Rules. This Court should grant the Motion and dismiss the Complaint.

## II.    STATEMENT OF ISSUES TO BE DECIDED

1.    Whether the Complaint can satisfy Rules 8 and 9(b) by relying primarily on anonymous Internet postings without identifying critical information about *Plaintiffs*' claims, including when the alleged malfunctions occurred, or what misrepresentations, omissions, or reliance occurred.

2.    Whether Plaintiffs' claims concerning products purchased in 2017 and 2018 are time barred.

3.    Whether Plaintiffs' warranty claims are barred by the express terms of Apple's warranty, their inability to allege "unmerchantability," or their failure to describe in detail the terms of any other relevant warranty agreement.

4.    Whether Plaintiffs can pursue fraud by omission claims or claims under consumer protection statutes without demonstrating a misrepresentation, a duty to disclose, or reliance, and whether their statutory claims fail to allege "unlawful," "unfair," or "fraudulent" conduct.

5.    Whether Plaintiffs can pursue equitable claims that are duplicative of their legal claims without alleging an inadequate remedy at law.

6.    Whether Plaintiffs can plead class claims covering devices they never purchased and asserting breaches of state laws where no named plaintiff resides.

## III.    SUMMARY OF FACTUAL ALLEGATIONS

The Complaint's allegations concerning Plaintiffs' own experiences are sparse. Mr. Narayanan is a resident of Florida and alleges that he purchased a 13-inch Retina MacBook Pro online in March 2017. (Compl. ¶ 44.) At some unspecified time after this purchase, Mr. Narayanan alleges that he "began experiencing problems with his laptop" including "overheating" and swelling that "prevent[ed] the device from being able to sit flush on a flat surface" and "distorted" one of the speakers. (*Id.* ¶ 47.) Mr. Narayanan alleges that this condition rendered his MacBook Pro "unsafe to operate." (*Id.*) He

Gibson, Dunn &
Crutcher LLP

alleges that he brought the four-year-old MacBook Pro for repair in April 2021 and paid to have the battery replaced. (*Id.* ¶ 48.) Mr. Narayanan alleges that in May 2024, he again "experienced overheating and an expansion issue with []his" now seven-year-old MacBook Pro and brought it again for repair to replace the battery. (*Id.* ¶ 49.) Mr. Narayanan also alleges that, at an unspecified date, he purchased a Magic Trackpad that "began having issues of battery swelling" "[i]n or about 2022." (*Id.* ¶ 52.)

Ms. Saedi is a California resident and she alleges that she purchased a 13.3-inch MacBook Air in December 2018. (Compl. ¶ 54.) She alleges only that she "began experiencing problems with her laptop" "[o]ver time" and that the device "was overheating to the point where she could not comfortably or safely use the device." (*Id.* ¶ 57.) She offers no more specific detail and states only that she then replaced her MacBook Air with a laptop from a different manufacturer. (*Id.*)

Perhaps aware that their own experiences do not plausibly support claims for relief, the Complaint relies primarily on a targeted recall of the batteries in a subset of a different Apple laptop model and on anonymous Internet posts from unidentified users alleging battery-related issues in a variety of Apple products. The Complaint's allegations about purported battery "defects" center on a voluntary 2019 recall involving the batteries in a limited number of older Apple MacBook Pro Retina 15-inch portable computers sold primarily between 2015 and 2017. (Compl. ¶ 24; *see also id.* ¶¶ 3–4.) Apple voluntarily announced the recall in a press release in June 2019, having determined that in this limited set of Retina, 15-inch, Mid 2015 MacBook Pro devices, the battery may overheat and pose a fire safety risk. (*Id.* ¶ 3.) Apple simultaneously offered that affected customers could have a free battery replacement.[1] The notice instructed affected purchasers how to identify if their laptop was included in the program and directed them to a webpage to initiate the replacement process. (*Id.* & n.3.) Plaintiffs' laptops were *not* part of the recall, and they did not even purchase the same model device at issue in that recall. But Plaintiffs nevertheless allege that the limited recall demonstrates that "batteries in many Apple laptops"—including their devices—"continue[] to exhibit issues with battery expansion." (Compl. ¶ 25.) Plaintiffs assert that Apple "has continued to advertise and market" certain devices and "failed to disclose" that those devices are allegedly "defective" "despite being aware of the defect and

---

[1] www.apple.com/newsroom/2019/06/important-notice-for-batteries-in-certain-macbook-pro-units/.

Gibson, Dunn &
Crutcher LLP

safety risks associated with the devices since at least June 2019." (*Id.* ¶¶ 37, 38.)  Plaintiffs also claim that "Apple is aware of this continuing problem with its lithium-ion batteries and is aware that the June 2019 recall did not include all impacted devices." (*Id.* ¶ 40.)  The Complaint does not provide any facts to support the alleged connection between the limited 2019 recall and any other Apple devices.

Plaintiffs also relay a handful of anonymous, unverified Internet posts alleging battery problems in various Apple laptops.  For example, the Complaint references anonymous consumer reports and web postings that a handful of devices among millions sold experienced issues—specifically, three laptops caught on fire, two others experienced battery swell or overheating, and three Trackpad batteries swelled.  (Compl. ¶¶ 27–30.)  Plaintiffs cite more anonymous reports about different laptops that allegedly experienced "overheating, swelling, and suffer[ed] damage." (*Id.* ¶ 39.)  They do not identify any of these users, and many of the postings lack critical details—including the conditions in which the devices were used or whether there was an external or intervening cause of the problems.

Plaintiffs bring a putative "nationwide class action" on behalf of "consumers who purchased Apple MacBook Pro laptops equipped with Apple-branded OEM lithium-ion batteries, Apple Magic Trackpads, or Apple-branded OEM lithium-ion batteries for use in an Apple device … for personal or household use or not for resale." (Compl. ¶ 1.)  Plaintiffs bring claims for breach of implied warranty on behalf of a multi-state class of thirty-eight jurisdictions (Count I), violation of the California Unfair Competition Law (UCL) on behalf of a California subclass (Count II), violation of the California Consumers Legal Remedies Act (CLRA) on behalf of a California subclass (count III), unjust enrichment on behalf of a multi-state class of forty jurisdictions (Count IV), breach of express warranty on behalf of a multi-state class of nine jurisdictions (Count V), breach of the Song-Beverly Consumer Warranty Act on behalf of a California subclass (Count VI), and fraud by omission on behalf of the nationwide class (Count VIII).[2]  Plaintiffs plead California and Florida subclasses in the alternative for their breach of implied warranty, unjust enrichment, breach of express warranty, and fraud by omission claims.

---

[2]  The Complaint's caption lists eight counts, but the text identifies only seven and labels the final claim as "Count VIII."

DEFENDANT APPLE INC.'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT
CASE NO. 5:24-cv-07286-EJD

Gibson, Dunn &
Crutcher LLP

## IV.    LEGAL STANDARD

Rule 8 of the Federal Rules of Civil Procedure requires a plaintiff to "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Crittenden v. Apple Inc.* ("*Crittenden II*"), No. 21-4322-EJD, 2023 WL 6149895, at *2 (N.D. Cal. Sept. 19, 2023) (citation omitted). While the court normally accepts nonconclusory factual allegations as true, it "need not accept as true allegations that contradict matters properly subject to judicial notice or by exhibit." *Gonzalez v. Planned Parenthood of L.A.*, 759 F.3d 1112, 1115 (9th Cir. 2014) (punctuation omitted). Plaintiffs must offer more than a "formulaic recitation of the elements of a cause of action." *Watkins v. MGA Entm't, Inc.* ("*Watkins II*"), 574 F. Supp. 3d 747, 753 (N.D. Cal. Dec. 10, 2021) (citation omitted). Rigorous scrutiny at the pleading stage is essential—the factual allegations "must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014).

"Consumer-protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b)." *In re Apple Inc. Device Perf. Litig.*, 386 F. Supp. 3d 1155, 1164 (N.D. Cal. 2019). Plaintiffs' UCL, CLRA, and fraud by omission claims all sound in fraud and must meet Rule 9(b) by "stat[ing] with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125, 1127 (9th Cir. 2009). The allegations must "set forth 'the who, what, when, where, and how' of the misconduct." *Apple Device Perf. Litig.*, 386 F. Supp. 3d at 1164. The allegations "must contain an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations," and the complaint must "plead facts explaining why the statement was false when it was made." *Yastrab v. Apple Inc.*, No. 14-1974-EJD, 2015 WL 1307163, at *2 (N.D. Cal. Mar. 23, 2015).

## V.    ARGUMENT

### A.    Plaintiffs' Generalized Claims About Battery "Defects" Do Not Satisfy Rules 8 and 9 Because They Lack Specific Details About Their Own Devices

Plaintiffs' claims do not meet even the basic pleading requirements of Rule 8, let alone the

Gibson, Dunn & Crutcher LLP

heightened pleading requirements of Rule 9 for their fraud claims. Rule 8 requires plaintiffs to "assert well-pleaded factual allegations to advance to discovery," *Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1177 (9th Cir. 2021), and Rule 9 requires plaintiffs to plead "'the who, what, when, where, and how' of the misconduct," *Kearns*, 567 F.3d at 1124 (quotation marks omitted). Rule 9(b) also requires Plaintiffs to allege any misrepresentations by Apple with specificity. *Yastrab*, 2015 WL 1307163, at *3. And, for omission-based claims, "Plaintiffs are required to satisfy Rule 9(b) with respect to the affirmative representations on which they base their omission claims." *Stark v. Patreon, Inc.*, 656 F. Supp. 3d 1018, 1040 (N.D. Cal. 2023). It is not enough to allege threadbare details about the plaintiffs' own experiences, lacking even the dates when the purported issues occurred. Nor is it enough to rely "on anonymous online postings about *other* people's perceived performance issues," as these postings "do not support a plausible claim that *Plaintiffs* experienced issues with" their devices. *Crittenden v. Apple Inc.* ("*Crittenden I*"), No. 21-4322-EJD, 2022 WL 2132224, at *3 (N.D. Cal. June 14, 2022).

Here, Plaintiffs allege only unspecified issues about their own devices coupled with speculative complaints by anonymous Internet posters. Mr. Narayanan alleges that the laptop he purchased from a third-party vendor in 2017—a 15-inch MacBook Pro—experienced "overheating and was swollen." (Compl. ¶ 47.) But he does not allege *when* this occurred, noting only that he took the device for repair in 2021, more than four years after his initial purchase. (*Id.* ¶¶ 44, 47–48.) Mr. Narayanan also alleges that he purchased a Magic Trackpad at an unknown time and that "[i]n or about 2022," the Trackpad "began having issues of battery swelling." (*Id.* ¶ 52.) He does not allege that he sought a repair for this device or addressed any other potential causes of this alleged distortion. Mr. Narayanan makes no allegations concerning any "safety" issues with his devices. Implausibly, he asserts that he "discovered the defect in these devices in 2024," and that "no reasonable diligence … could have revealed the defect." (*Id.* ¶ 53.) That assertion should not be credited, given his allegation that his MacBook required repair in 2021 and 2024 and that his Trackpad malfunctioned "[i]n or about 2022." (*Id.* ¶ 52.)

Ms. Saedi's allegations are even more threadbare. She states only that she purchased a 13-inch MacBook Air laptop in 2018, that she did not use a third-party battery, and that "[o]ver time" she "began experiencing problems with her laptop" that included "overheating to the point where she could not comfortably or safely use the device." (Compl. ¶ 57.) She does not allege when these malfunctions

began, what actions she took to remedy them, or whether she sought a repair from Apple. These allegations are insufficient to meet the demands of Rule 8 or Rule 9.

Plaintiffs also attempt to rely on anonymous Internet postings concerning a random assortment of other devices that allegedly experienced overheating, swell, or other battery-related concerns. These allegations rest on the speculation of unidentified Internet posters, and even on their face some posts have nothing to do with lithium-ion batteries supplied by Apple. (*See, e.g.*, Compl. ¶ 39 n.26 (relaying swell in third-party replacement battery installed in Apple device).) Setting those issues aside, Plaintiffs' reliance on anonymous Internet forum posts cannot stand in for specific allegations about Plaintiffs' own injuries. Allegations that "focus on anonymous online postings about *other* people's perceived performance issues … do not support a plausible claim that *Plaintiffs* experienced issues with" their devices. *Crittenden I*, 2022 WL 2132224, at *3.

As to Plaintiffs' fraud by omission claim, Plaintiffs generically claim that Apple "volunteered information to Plaintiffs" "through advertising and other means" that the devices "were functional, premium products without disclosing facts that would have materially qualified those partial representations." (Compl. ¶ 92.) They assert that Apple "provided to each consumer and the public a manual that includes a specific section on 'Safety and Handling' containing 'Important Safety Information' with no disclosures about the propensity of the batteries to overheat, swell, or explode." (*Id.*) But the very manual the Complaint references (and thus incorporates) states in the "Important Safety Information" section that "Your MacBook Pro … may become very warm during normal use" and gives extensive guidance on proper operation to avoid heat related issues. (*See* Request for Judicial Notice ("RJN"), Ex. D at 53; *see also* RJN, Ex. E at 1 (similar).[3]) Although Plaintiffs primarily assert a failure to disclose, because they base that failure on alleged partial affirmative representations (Compl. ¶ 92), they do not "satisfy Rule 9(b) with respect to the affirmative representations on which they base their

---

[3] This Court may take judicial notice of the warranties, as the Complaint incorporates them by reference. *See generally* Fed. R. Evid. 201(b); *Apple Device Perf. Litig.*, 386 F. Supp. 3d at 1164 (taking judicial notice of Apple warranties).

omission claims." *Stark*, 656 F. Supp. 3d at 1040.  Plaintiffs have not identified any particular state-ment from Apple that they allegedly reviewed, when they were exposed to such a statement, or what impact it had on their decision to purchase Apple products.  They resort to generalized allegations that Apple "volunteered information to Plaintiffs," or that "Plaintiffs saw the external packaging of the laptop" and "relied on Defendant's representations about the laptop online or in product advertise-ments, and/or in the online purchase portal, and/or in the user guide, … the setup process, or product launch events." (Compl. ¶ 95.)  Those allegations are insufficient.  The "extensive use of generalized plural nouns … and a marked absence of named particulars—are a dead giveaway that the [C]om-plain[t] [is] skirting the pleading requirements imposed by Rule 9(b)."  *Crittenden I*, 2022 WL 2132224, at *3 (quotation marks omitted).  And, because Plaintiffs have not identified with specificity any misrepresentations Apple made to them, they also do not allege that they reasonably relied on any statements.  The Complaint should be dismissed in its entirety because it does not allege a plausible claim for relief under the standard of Rule 8 and the heightened standard required by Rule 9(b).

## B.    The Statutes of Limitation Bar All of Plaintiffs' Claims

Plaintiffs' lawsuit is premised on the faulty assumption that a recall—which occurred *more than five years ago concerning a limited subset of batteries within a laptop model that no Plaintiff purchased*—demonstrates that all lithium-ion batteries in Apple MacBook Pro, MacBook Air, and Magic Trackpad devices are "defective."  Apple vigorously disputes that implausible premise.  But even crediting that theory as true, Plaintiffs' claims based on 2017 and 2018 purchases are untimely.

Plaintiffs plead claims under California law, where Ms. Saedi resides; Mr. Narayanan, a Florida resident, pleads claims under Florida law in the alternative.  These claims have limitations periods of, at most, five years.  *See, e.g.*, Fla. Stat. § 95.11(2)(b) (written contract 5-year period); *id.* § 95.11(3)(i)–(k) (fraud and unwritten contract 4-year period); Cal. Com. Code § 2725 (Song-Beverly Act 4-year period); Cal. Bus. & Prof. Code § 17208 (UCL claim 4-year period); Cal. Civ. Code § 1783 (CLRA claim 3-year period); Cal. Civ. Proc. Code § 339(1) (unwritten contract 2-year period); Cal. Civ. Proc. Code § 338(d) (fraud 3-year period).  Plaintiffs allege their devices were "defective, unmerchantable, and unfit for their ordinary, intended purpose" (Compl. ¶ 74), meaning that they were "defective" *at*

*the time of purchase* in 2017 and 2018.[4]  Thus the limitations period for these devices expired, at the latest, in 2023—five years after the last identified purchase and long before they filed their Complaint.

Plaintiffs concede that various of their claims "would otherwise have expired," but assert that "these claims are tolled by the delayed discovery rule."  (Compl. ¶ 116 (CLRA claims); *id.* ¶ 177 (fraudulent omission claims); *id.* ¶ 161 (Song-Beverly Act claim, asserting tolling by "doctrine of fraudulent concealment").)  They are not.  First, the delayed discovery rule has no bearing on Plaintiffs' unjust enrichment claim under Florida law.  While the discovery rule applies to certain contract or fraud actions under Florida law, *see R.A. Jones & Sons Inc. v. Holman*, 470 So. 2d 60, 66 (Fla. Dist. Ct. App. 1985), it "is inapplicable to extend the limitations period for unjust enrichment claims," *Flat-irons Bank v. Alan W. Steinberg Ltd. P'ship*, 233 So. 3d 1207, 1213 (Fla. Dist. Ct. App. 2017).  The "four-year statute of limitations" for unjust enrichment claims, under Florida law, "begins to run at the time the alleged benefit is conferred and received by the defendant."  *Id.*

Second, "[u]nder the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period."  *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 807 (2005).  The allegations in the Complaint foreclose the discovery rule.  The Complaint's core rests on the assertion that a June 2019 recall of a subset of a specific model of MacBook Pro computers—that Plaintiffs do *not* allege they purchased—proves both that the *different* devices Plaintiffs purchased were "defective" and that Apple knew about and intentionally withheld information about the alleged "defect."  (Compl. ¶¶ 3–5, 24–25, 35, 37–38, 41.)  If, as Plaintiffs allege, the limited recall proves that Plaintiffs' products (and beyond) are "defective" *and* that Apple knew about the "defect," then those contentions only confirm that the recall also provided sufficient notice for Plaintiffs to inquire about potential "defects" in their own devices.  And, even setting aside the recall, Plaintiffs cannot have remained unaware of an alleged "defect" given that they sought repairs as long ago as 2021.  Plaintiffs' own timeline is irreconcilable with their implausible assertion that they "discovered the defect in these devices in 2024."  (*Id.* ¶ 53.)

Plaintiffs' attempt to invoke the doctrine of fraudulent concealment fares no better.  (Compl.

---

[4]  Mr. Narayanan does not allege when he purchased his Trackpad accessory.

Gibson, Dunn &
Crutcher LLP

¶ 161.)  To invoke the doctrine of fraudulent concealment, a plaintiff "must plead with particularity the facts giving rise to the fraudulent concealment claim and must establish that they used due diligence in trying to uncover the facts."  *In re ZF-TWY Airbag Control Units Prods. Liab. Litig.*, 601 F. Supp. 3d 625, 812 (C.D. Cal. 2022) (quoting *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1415–16 (9th Cir. 1987)).  Those facts must show "(1) a knowingly false representation by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages."  *Id.* at 813 (quotation marks omitted).  Plaintiffs do not allege any facts supporting any of these elements. A defendant's "silence or passive conduct does not constitute fraudulent concealment."  *Id.* at 812 (quotation marks omitted).  Because Plaintiffs allege, at most, silence, and because their generic assertion of concealment does not meet the particularity demands of Rule 9(b) (*see supra* pp. 8–9), the doctrine of fraudulent concealment does not toll their claims.

## C.    The Court Should Dismiss Plaintiffs' Warranty Claims

Plaintiffs' implied warranty (Count I), express warranty (Count V), and Song-Beverly Consumer Warranty Act (Count VI) claims are legally deficient and should be dismissed.  Apple disclaimed implied warranties and properly limited any warranty (implied or express) to one year after purchase. Plaintiffs have not plausibly alleged a "defect" that renders their devices "unmerchantable."  And Plaintiffs do not to meet multiple prerequisites of a Song-Beverly Act claim.

### 1.    *Plaintiffs Cannot State Their Implied Warranty and Song-Beverly Act Claims (Counts I and VI).*

Plaintiffs allege in conclusory terms that Apple breached the implied warranty of merchantability and violated the Song-Beverly Act because their devices "suffer from a safety defect" and are therefore "defective, unmerchantable, and unfit for their ordinary, intended purpose." (Compl. ¶¶ 47–52, 55–57, 74–75, 158).  But Apple's warranties limit Apple's liability for merchantability claims to one year after purchase—long before Plaintiffs' devices allegedly developed any issues.  Further, Plaintiffs do not adequately plead facts to show that their devices possessed a "safety defect," and they have failed to plead various requirements under the Song-Beverly Act.

(a)    <u>Apple's warranties bar the implied warranty claim</u>.  Plaintiffs' implied warranty claim should be dismissed for two reasons:  (i) Apple's limited warranties clearly and effectively disclaim

1  implied warranties; and (ii) for those warranties that cannot be disclaimed, Apple's limited warranties

2  restrict the maximum duration to one year after purchase.

3          Apple provides a one-year limited warranty for its MacBook Pro, MacBook Air, and Magic

4  Trackpad devices.[5]  The warranties applicable to Plaintiffs' laptops "disclaim[] all statutory and implied

5  warranties, including without limitation, warranties of merchantability and fitness for a particular pur-

6  pose and warranties against hidden or latent defects, to the extent permitted by law."  (RJN, Ex. A at 1;

7  Ex. B at 1.)  This "conspicuous" disclaimer that explicitly mentions "merchantability" operates to ex-

8  clude the implied warranty of merchantability.  Cal. Com. Code § 2316(2); Fla. Stat. § 672.316; *Min-*

9  *kler v. Apple Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014); *Rose v. ADT Sec. Servs., Inc.*, 989 So. 2d

10  1244, 1248 (Fla. Dist. Ct. App. 2008).  Other courts have upheld Apple's disclaimer of the implied

11  warranties applicable to Plaintiffs' devices.  *See, e.g.*, *Minkler*, 65 F. Supp. 3d at 819; *Smith v. Apple*

12  *Inc.*, No. 21-09527-HSG, 2023 WL 2095914, at *6 (N.D. Cal. Feb. 17, 2023); *Tabak v. Apple Inc.*,

13  No. 19-02455-JST, 2020 WL 9066153, at *15 (N.D. Cal. Jan. 30, 2020).  Plaintiffs offer no basis to

14  depart from these well-reasoned decisions.

15          Apple has also limited its warranties to one year.  (RJN, Ex. A at 1 ("in so far as such [implied]

16  warranties cannot be disclaimed, Apple limits the duration and remedies of such warranties to the du-

17  ration of this express warranty"); Exs. B–C at 1 (limiting duration to one year).)  That one-year limit is

18  valid and enforceable.  *See Speier-Roche v. Volkswagen Grp. of Am., Inc.*, No. 14-20104-CIV, 2014

19  WL 1745050, at *8 (S.D. Fla. Apr. 30, 2014).  Plaintiffs do not allege that the purported "defects" arose

20  within one year of purchase.  Mr. Narayanan purchased his MacBook Pro in 2017; he does not state

21  when he first experienced problems with the device, only that he first sought a battery repair four years

22  after purchase. (Compl. ¶¶ 44–48.)  Mr. Narayanan never alleges a date of purchase for his Trackpad—

23  only that he began having problems with it "[i]n or about 2022." (*Id.* ¶¶ 50–52.)  Ms. Saedi only alleges

24  that her MacBook Air began overheating "[o]ver time." (*Id.* ¶¶ 54–57.)  Plaintiffs' claims are either

25

26  _____

27  [5]  Because Mr. Narayanan does not identify when he purchased his Trackpad, it is not possible to
    identify precisely which warranty covers his product.  But all relevant Apple accessory warranties in-

28  clude a one-year limitation.

out of the limitations window (*see supra* pp. 9–11), foreclosed by the warranty period, or both.[6]

Nor may Plaintiffs evade the warranties by labeling them as "unconscionable." (Compl. ¶ 78.) To be unenforceable, a contract or clause must be both procedurally and substantively unconscionable. *Carboni v. Arrospido*, 2 Cal. App. 4th 76, 83 (1991); *Murphy v. Courtesy Ford, L.L.C.*, 944 So. 2d 1131, 1134 (Fla. Dist. Ct. App. 2006). Plaintiffs have alleged neither. And courts have repeatedly upheld Apple's warranties in similar attacks. *See, e.g.*, *Tabak*, 2020 WL 9066153, at *16; *Berenblat v. Apple Inc.*, Nos. 08-4969-JF, et al., 2010 WL 1460297, at *5 (N.D. Cal. Apr. 9, 2010).

(b) <u>Plaintiffs do not allege a breach of the implied warranty of merchantability</u>. Plaintiffs have not stated a claim for breach of the implied warranty of merchantability for the additional reason that they have not alleged a defect that renders their devices "unmerchantable." The implied warranty of merchantability only requires a "minimum level of quality." *Am. Suzuki Motor Corp. v. Sup. Ct.*, 37 Cal. App. 4th 1291, 1296 (1995) (citation omitted). A breach occurs when the product lacks "even the most basic degree of fitness for ordinary use." *Birdsong v. Apple Inc.*, 590 F.3d 955, 958 (9th Cir. 2009) (quoting *Mocek v. Alfa Leisure, Inc.*, 114 Cal. App. 4th 402, 406 (2003)).

Plaintiffs do not allege that their devices lack the "most basic degree of fitness" for ordinary use. *Id.* Nor could they—Plaintiffs' devices functioned without issue for years, long past the timeframe covered by the warranty period. Plaintiffs' implied warranty claim rests on the bare assertion that their devices "suffer from a safety defect" (Compl. ¶ 75), but the only details Plaintiffs offer about their own devices describes (1) a Trackpad that experienced "battery swelling resulting in the device coming apart at the seams" (*id.* ¶ 52); (2) a MacBook Pro that "was overheating and was swollen, preventing the device from being able to sit flush," and that had an "overheating and an expansion issue" (*id.* ¶¶ 47, 49); and (3) a MacBook Air that "was overheating to the point where she could not comfortably or safely use the device" (*id.* ¶ 57). Plaintiffs do not explain how any of these issues are "safety defects"

---

[6] Plaintiffs attempt to preserve their Song-Beverly Act claim by asserting "[t]he defect in these devices is latent." (Compl. ¶ 159.) But a plaintiff's Song-Beverly Act claim for any latent "defect" "accrue[s] at the time he or she purchased" the devices and runs for four years. *In re ZF-TRW Airbag Litig.*, 601 F. Supp. 3d at 810–12. That period has now expired. (*Supra* pp. 12–13.)

1    that undermine what they define as the devices' purpose—the "safe and reliable powering of" their

2    devices. (Compl. ¶ 20.) Plaintiffs repeatedly incant vague words like "overheating" and make conclu-

3    sory statements that battery swells made their devices "unsafe to operate." (*Id.* ¶¶ 47, 57.) But "mere

4    conclusory statements" and Plaintiffs' subjective beliefs that their devices are unsafe do not satisfy the

5    pleading standard (*see Iqbal*, 556 U.S. at 663), and these bare assertions do not establish that Plaintiffs

6    "have suffered or are substantially certain to suffer" any harm related to their devices (*see Birdsong*,

7    590 F.3d at 959). Because the Complaint lacks sufficient facts to allege a "defect" that rendered their

8    devices unmerchantable, this Court should dismiss the implied warranty claim.

9        (c) <u>Plaintiffs do not state a claim under the Song-Beverly Act</u>. Because Plaintiffs do not plead

10    a breach of the implied warranty of merchantability, they also do not plead a Song-Beverly Act claim.

11    *Birdsong*, 590 F.3d at 958 n.2 (Song-Beverly Act claim "require[s] the plaintiffs to plead successfully

12    a breach of state warranty law," and it therefore falls with implied warranty claim).

13        In addition, Song-Beverly's protections only extend to "sale[s] of consumer goods that are sold

14    at retail" within the state of California. Cal. Civ. Code § 1792. Courts in this District have dismissed

15    complaints if the plaintiffs "d[id] not allege where they purchased" their devices, reasoning that it is

16    "not plausible to infer" that even California residents necessarily purchased that item in the state. *In*

17    *re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 926 (N.D. Cal. 2018); *In re SanDisk SSDs Litig.*,

18    No. 23-04152-RFL, 2024 WL 3422597, at *2 (N.D. Cal. June 5, 2024). Plaintiffs claim status as

19    "buyer[s]" under the Act because "[t]hey acquired their Apple laptops *in Florida* and California,

20    through either the Defendant's website, a physical Apple store, or an authorized reseller within Cali-

21    fornia." (Compl. ¶ 152 (emphasis added).) But neither Mr. Narayanan nor Ms. Saedi specifically

22    allege that they purchased their devices *in California*. Mr. Narayanan claims that he purchased his

23    MacBook Pro on "Amazon" and his Trackpad from "Best Buy," but he does not state that the purchases

24    occurred within California. (*Id.* ¶¶ 44, 50.) Likewise, while Ms. Saedi lives in California, she makes

25    no affirmative statement that she purchased her MacBook Air in California. (*Id.* ¶ 54.) Relying upon

26    Ms. Saedi's state of residence is "insufficient" to establish that she purchased her MacBook Air "at

27    retail" within the state. *In re SanDisk SSDs Litig.*, 2024 WL 3422597, at *2.

28

1      **2.    *Plaintiffs Also Do Not State an Express Warranty Claim (Count V).***

2          Plaintiffs contend that Apple gave them an "express warranty in the form of representations and

3    marketing regarding the safety and utility of its lithium-ion battery powered devices." (Compl. ¶ 137.)

4    These allegations directly contradict the limiting provisions in Apple's warranties, both because Ap-

5    ple's warranties limit coverage of lithium-ion batteries and because Apple's express warranties restrict

6    coverage to one year after purchase.  Further, neither Mr. Narayanan nor Ms. Saedi gave Apple rea-

7    sonable notice of the alleged "defects," as required to state an express warranty claim.

8          (a)  Apple's warranties bar the express warranty claim.  Plaintiffs do not and cannot establish a

9    breach of express warranty claim for the simple reason that they do not identify any express term that

10    Apple allegedly breached.  In fact, Apple's warranty expressly excludes consumable parts, such as

11    batteries, and it restricts express warranty claims to one year after purchase.

12          An express warranty claim requires the plaintiff to allege "(1) the exact terms of the warranty;

13    (2) reasonable reliance thereon; and (3) a breach of warranty which proximately caused plaintiff's in-

14    jury." *Baltazar v. Apple Inc.*, No. 10-3231-JF, 2011 WL 3795013, at *2 (N.D. Cal. Aug. 26, 2011).

15    General assertions are not sufficient to establish the first element—a plaintiff must show that a defend-

16    ant "made affirmations of fact or promises that became part of the basis of the bargain."  *Maneely v.*

17    *Gen. Motors Corp.*, 108 F.3d 1176, 1181 (9th Cir. 1997); *see also* Cal. Com. Code § 2313.  To establish

18    the terms of an express warranty, plaintiff must "identify a specific and unequivocal written statement

19    relating to the title, character, quality, identity, or condition of the sold goods." *Watkins v. MGA Entm't,*

20    *Inc.* ("*Watkins I*"), 550 F. Supp. 3d 815, 830 (N.D. Cal. July 26, 2021) (citation omitted).

21          Here, Plaintiffs never identify the exact terms of any express warranty offered by Apple, alleg-

22    ing generally that Apple "provided Plaintiffs … with an express warranty in the form of representations

23    and marketing regarding the safety and utility of its lithium-ion battery powered devices," and that the

24    "terms" of the contract formed when they purchased their devices "include the promises and affirma-

25    tions of fact" Apple made "through an extensive, uniform, nationwide marketing campaign." (Compl.

26    ¶¶ 137, 139.)  Those generic assertions do not describe the terms of the agreement, nor do they provide

27    any plausible basis to establish any "reasonable reliance" or "breach."

28          This Court can and should take judicial notice of the warranties, which demonstrate that there

was no express warranty of the sort Plaintiffs allege. *See Apple Device Perf. Litig.*, 386 F. Supp. 3d at 1165 ("Incorporation by reference is proper here because Plaintiffs' battery defect theory necessarily depends upon the hardware warranty."). Apple's warranties expressly "do[] not apply" to "consumable parts, such as batteries or protective coatings that are designed to diminish over time, unless failure has occurred due to a defect in materials or workmanship." (RJN, Ex. A at 2; Ex. B at 2; Ex. C at 1.) An alleged "defect in materials or workmanship" requires the plaintiff to "identify/explain how the [product] either deviated from [defendant's] intended result/design or how the [product] deviated from other seemingly identical [product] models." *McGill v. Ford Motor Co.*, No. 24-01084-JST, 2024 WL 2941632, at *4 (N.D. Cal. June 11, 2024) (citation omitted). Plaintiffs make no such allegations. Instead, they allege that Apple made "representations" regarding the "safety and utility of its lithium-ion battery powered devices." (Compl. ¶ 137.) But claims that a product's design is "dangerous" when "properly manufactured" is a *design defect*, which is not covered by Apple's express warranty for consumable parts. *Webb v. Special Elec. Co..*, 63 Cal. 4th 167, 180 (2016).

Additionally, Plaintiffs ignore that Apple unequivocally limited its express warranty coverage to one year after purchase. (*See* RJN, Ex. A at 1–2; Ex. B at 1; Ex. C at 1.) Plaintiffs' express warranty claims are either time barred, outside the warranty period, or both. (*See supra* pp. 9–11.)

(b) Plaintiffs did not provide reasonable notice. The Court also should dismiss the express warranty claims because Plaintiffs did not provide notice within a reasonable time. A buyer must "notify the seller of breach or be barred from any remedy" and that notification must come "within a reasonable time after he or she discovers or should have discovered any breach." Cal. Com. Code § 2607(3); Fla. Stat. § 672.607(3)(a) (similar); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 169 Cal. App. 4th 116, 135–37 (2008); *see also Alvarez v. Chevron Corp.*, 656 F.3d 925, 931–32 (9th Cir. 2011); *Gen. Matters, Inc. v. Paramount Canning Co.*, 382 So. 2d 1262, 1264 (Fla. Dist. Ct. App. 1980) (citing *E. Airlines, Inc. v. McDonnell Douglas Corp.*, 532 F.2d 957 (5th Cir. 1976)).

Plaintiffs have not met their pleading burden. At best, the Complaint alleges that Plaintiffs delivered "notice by U.S.P.S. Certified Mail" of their breach of warranty claims "on September 5, 2024"—almost three and a half years *after* Mr. Narayanan's MacBook Pro allegedly swelled, and two years *after* his Trackpad allegedly malfunctioned. (Compl. ¶¶ 47–48, 52, 57, 146.) Courts have held

that buyers who failed to notify the seller for "years after" the alleged breach occurred did not provide reasonable notice. *See Cardinal Health 301*, 169 Cal. App. 4th at 136–37 (plaintiffs did not provide notice for almost two years before filing suit); *Gen. Matters, Inc.*, 382 So. 2d at 1264 (nearly three-year delay unreasonable). There are no other allegations about notifying Apple of the alleged issues with Ms. Saedi's MacBook Air or Mr. Narayanan's Trackpad. Any express warranty claim as to those devices is therefore barred. And while Mr. Narayanan replaced his MacBook Pro's batteries in 2021 and 2024, he does not explain when the alleged malfunction began—and the "reasonable" time period is shorter where the buyer "continue[s] to use the product." *Hapag-Lloyd, A.G. v. Marine Indem. Ins. Co. of Am.*, 576 So. 2d 1330, 1330 (Fla. Dist. Ct. App. 1991) (buyer's decision to "continue to use the [product] in its defective state" for "up to four weeks" without notifying the seller precluded recovery).

**D.    The Consumer Protection and Fraud Claims (Counts II–III, VIII) Should Be Dismissed**

Plaintiffs raise three related fraud claims (UCL, CLRA, and common law fraud), but the Complaint does not allege any actionable misrepresentation, nor does it allege the necessary reliance. Plaintiffs' omission theory is an improper attempt to circumvent limitations on their warranty claims, and this theory is also inadequate because the Complaint does not establish that Apple had a duty to disclose. Nor do Plaintiffs allege any "unlawful" or "unfair" conduct. And Plaintiffs' CLRA claim lacks allegations necessary to meet the prerequisites for a claim under that statute.

### 1.    *Plaintiffs Do Not Allege a Misrepresentation or Reliance.*

Because Plaintiffs' theory of liability is that Apple's "marketing materials misrepresented, or failed to disclose material information regarding, the safety of its products," they must allege "specific facts showing that they relied on the alleged misrepresentations or omissions." *Watkins I*, 550 F. Supp. 3d at 833–34 (collecting authorities requiring misrepresentation or omission and reliance for UCL and CLRA claims sounding in fraud); *Yastrab*, 2015 WL 1307163, at *4–*5, *7 (same as to UCL, CLRA, fraud); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 857 (N.D. Cal. 2012) (fraud claim requires "misrepresentation (… or nondisclosure); … [and] justifiable reliance"). These claims often, as here, fall together. *See, e.g.*, *Elias*, 903 F. Supp. 2d at 858.

Although Plaintiffs make generalized assertions about Apple's advertising or other statements, they do not identify any with the specificity required by Rule 9(b). *Garcia v. Sony Computer Entm't*

*Am. LLC*, 859 F. Supp. 2d 1056, 1063 (N.D. Cal. 2012) (rejecting claim based on general descriptions of product labeling and marketing). Because the Complaint does not identify Apple's purported "misrepresentations" in any detail, Plaintiffs' claims premised on affirmative misrepresentation are inadequate. The Complaint's lack of specificity also means that Plaintiffs have not alleged any materiality of or reliance on any misrepresentation—Plaintiffs have "not even alleged what representations [they] encountered, let alone that [they] relied upon them." *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1114 (N.D. Cal. 2016); *see also Moran v. Healthcare Mgmt., Inc.*, 3 Cal. App. 5th 1131, 1152 (2016) ("[A] misrepresentation is material for a plaintiff only if there is reliance—that is, without the misrepresentation, the plaintiff would not have acted as he did." (quotation marks omitted)).

### 2. *Plaintiffs Do Not Allege an Actionable Omission or Reliance.*

Because they do not identify any affirmative statements in anything other than the most general terms, Plaintiffs rest predominantly on a theory of fraud by omission.

(a) <u>Plaintiffs cannot use fraud theories to resuscitate warranty claims.</u> "[A]bsent an affirmative representation, consumers have no legitimate expectation that a product will properly function after the expiration of the warranty." *Garcia*, 859 F. Supp. 2d at 1065. "California law is clear that its consumer fraud statutes cannot be used to extend a product's warranty." *Apple Device Perf. Litig.*, 386 F. Supp. 3d at 1178. "To allow a CLRA claim in these circumstances would be to supplant warranty law; failure of a product to last forever would become a defect and a manufacturer would no longer be able to issue limited warranties." *Id.* at 1178–79 (quoting *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249, 256–57 (2011)). The same is true of Plaintiffs' fraud by omission claim. *Apple Device Perf. Litig.*, 386 F. Supp. 3d at 1178 (concluding alleged defect outside warranty period was not material).

(b) <u>Plaintiffs do not allege a legal duty to disclose or the requisite knowledge.</u> "To state a claim for fraudulent omission, the omission must be contrary to a representation actually made by the defendant, or an omission of a fact the defendant was obliged to disclose." *Apple Device Perf. Litig.*, 386 F. Supp. 3d at 1175 (quotation marks omitted); *see also Rojas-Lozano*, 159 F. Supp. 3d at 1112 (same for CLRA claim). Plaintiffs do not identify an affirmative statement contrary to the alleged omission, nor do they allege any factors suggesting Apple had a duty to disclose.

Gibson, Dunn &
Crutcher LLP

Plaintiffs rely on Apple having "a clear duty to disclose the defect" that "stemmed from both the material and unreasonable safety hazard the defect posed and Defendant's exclusive knowledge of the battery defect." (Compl. ¶ 169.) The Ninth Circuit has held that a duty to disclose arises in the consumer products context only if the plaintiff can "allege that the design defect caused an unreasonable safety hazard." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1143 (9th Cir. 2012). In other cases, some courts have noted that the duty may also arise if the product has a "central function defect," which requires the plaintiff to show "(1) the omission is material; (2) the defect is central to the product's function; and (3) at least one of the following four factors is met: the defendant is the plaintiff's fiduciary; the defendant has exclusive knowledge of material facts not known or reasonably accessible to the plaintiff; the defendant actively conceals a material fact from the plaintiff; or the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Apple Device Perf. Litig.*, 386 F. Supp. 3d at 1176. But "if the defect arises outside of the warranty period, … then the manufacturer only has a duty to disclose 'safety issues.'" *Taleshpour v. Apple Inc.*, 549 F. Supp. 3d 1033, 1044 (N.D. Cal. 2021).

Although Plaintiffs make generalized assertions that their devices "present a serious safety risk" (Compl. ¶ 5), the Complaint does not allege any specific safety incident involving any device owned by Plaintiffs. They do not allege that their devices caused any physical injury or property damage. Plaintiffs' allegations rest on their subjective belief that they "could not … safely use the device" (*id.* ¶ 57), but that conclusory assertion does not meet Rule 9(b)'s particularity demand. Plaintiffs' only safety assertions connected to their own devices are of a "conjectural and hypothetical nature" and do not give rise to a claim. *Birdsong*, 590 F.3d at 961. Plaintiffs also rely on anonymous posts by a few purported purchasers whose devices caught fire, but they do not allege that anything similar happened with their own devices or allege facts sufficient to show that there were problems suggesting a hazard in the design. These allegations do not "raise[] safety concerns sufficient to require disclosure." *Smith v. Ford Motor Co.*, 749 F. Supp. 2d 980, 990 (N.D. Cal. 2010).

At most, Plaintiffs have asserted that their respective MacBook Pro and Air overheated. Such assertions are the type of condition "of which [Apple] expressly warns consumers." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1028–29 (9th Cir. 2017) (finding no unreasonable safety hazard in

1   assertions of "potential for onboard fires" and "loss of steering power" in outboard motors, given the

2   "standard" risk disclosed in product warnings).  Apple's "warranty makes clear that consumers cannot

3   expect batteries to last for the lifetime of their devices."  *Apple Device Perf. Litig.*, 386 F. Supp. 3d

4   at 1178.  And the product manual expressly discloses the possibility of "overheating."  (RJN, Ex. D

5   at 53 ("Your MacBook Pro … may become very warm during normal use."); *see also* RJN, Ex. E at 1

6   (similar).)  Plaintiffs thus do not establish a duty to disclose because they allege post-warranty "defects"

7   but do not identify an unreasonable safety risk.  *Taleshpour*, 549 F. Supp. 3d at 1044.

8          Because Plaintiffs allege a post-warranty failure, they cannot rely on the "central function"

9   theory to establish a duty to disclose.  Even if they could, the Complaint would not satisfy the "central

10  function" theory, either.  Plaintiffs attempt to allege "exclusive knowledge" or "active promotion" to

11  meet the final factor for the "central function" duty.  (Compl. ¶¶ 169–70.)  But neither allegation is

12  sufficient.  Plaintiffs' discussion of "active promotion" does not adequately plead a misleading partial

13  representation.  (*See supra* pp. 8–9.)  Nor do they adequately allege "exclusive knowledge."  To estab-

14  lish that element, Plaintiffs must "allege *how* the defendant obtained knowledge of the specific defect

15  *prior* [to] the plaintiff's purchase of the defective product."  *Stewart v. Electrolux Home Prods., Inc.*,

16  No. 17-1213, 2018 WL 1784273, at *8 (E.D. Cal. Apr. 13, 2018).  Plaintiffs imply that Apple knew

17  about the alleged defects in their devices because of the June 2019 recall of *other* MacBook Pro com-

18  puters, because of various complaints filed with the CPSC, and because Apple is experienced in de-

19  signing consumer electronics.  (Compl. ¶¶ 3, 37–41.)  Those allegations are inadequate.

20         Because the 2019 limited recall involved different devices that Plaintiffs did not purchase, it is

21  insufficient to establish Apple's knowledge.  *See Pascal v. Nissan N. Am., Inc.*, No. 20-492, 2022 WL

22  2784393, at *9 (C.D. Cal. June 8, 2022) (recalls do not demonstrate notice when "none of the recall

23  notices … involve the Class Vehicles").  As to the CPSC complaints, courts have concluded that as

24  many as *400* complaints with government regulators are inadequate to imply knowledge of a defect for

25  defendants, like Apple, that sell millions of consumer products.  *Cho v. Hyundai Motor Co.*, 636 F.

26  Supp. 3d 1149, 1168 (C.D. Cal. 2022) (400 complaints to NHTSA over decade-long period "is quan-

27  titatively insufficient" to create "inference of knowledge" "without some indicia of how those com-

28  plaints represent an 'unusually high' amount").  Consumer complaints are particularly uninformative

1  when they "are not limited" to the specific products in the class.  *Id.*  And many of the CPSC complaints

2  Plaintiffs identify (*see* Compl. ¶ 39), "post-date Plaintiffs' purchases and therefore are irrelevant to

3  demonstrate pre-sale knowledge."  *Cho*, 636 F. Supp. 3d at 1168.

4       Plaintiffs also identify various anonymous Internet forum posts, but these are also insufficient

5  to demonstrate pre-sale knowledge.  "[C]ourts have expressed doubt that customer complaints in and

6  of themselves adequately support an inference that a manufacturer was aware of a defect."  *Wilson*,

7  668 F.3d at 1147.  "Awareness of a few customer complaints … does not establish knowledge of an

8  alleged defect."  *Baba v. Hewlett-Packard Co.*, No. 09-5946-RS, 2011 WL 317650, at *3 (N.D. Cal.

9  Jan. 28, 2011); *see also Berenblat*, 2010 WL 1460297, at *9 ("[C]omplaints posted on Apple's con-

10  sumer website merely establish the fact that some consumers were complaining.").  Nor is the fact that

11  Apple is an experienced consumer electronics designer sufficient.  *See Ahern v. Apple Inc.*, 411 F.

12  Supp. 3d 541, 565 (N.D. Cal. 2019) (allegation that issue was "well-known in the technology commu-

13  nity" inadequate to attribute knowledge) (citation omitted).  Plaintiffs thus do not establish Apple had

14  actual knowledge of any alleged "defect," defeating any attempt to show "exclusive knowledge," con-

15  cealment, or partial disclosure under the "central function" theory.

16       (c) <u>Plaintiffs do not show reliance</u>.  Plaintiffs also have not shown reliance on a material omis-

17  sion.  While a plaintiff may not be able to "specify the time, place, and specific content of an omission

18  as precisely as would a plaintiff in a false representation claim," the Complaint must nevertheless

19  "plead the circumstances of omission with specificity."  *Watkins I*, 550 F. Supp. 3d at 826 (quotation

20  marks omitted).  The plaintiff must "describe the content of the omission and where the omitted infor-

21  mation should or could have been revealed, as well as provide representative samples of advertise-

22  ments, offers, or other representations that plaintiff relied on to make her purchase and that failed to

23  include the allegedly omitted information."  *Id.* (quotation marks omitted).  Plaintiffs have not alleged

24  samples of advertisements or statements they relied on, instead asserting only that Apple should have

25  made disclosures in "advertising, press releases, the product packaging" or other documents.  (Compl.

26  ¶¶ 96, 114, 170.)  That boilerplate allegation does not meet Rule 9(b)'s demand.

27       **3.**    ***Plaintiffs' Fraud-Based Theories Fail for Additional Reasons.***

28       (a) <u>Plaintiffs do not allege "unlawful" or "unfair" acts</u>.  Plaintiffs also do not state a claim for

1    "unlawful" and "unfair" business practices to support their UCL claim. "The reliance requirement

2    applies not only to UCL claims asserted under the fraud prong of Section 17200 but also to claims

3    under the 'unlawful' and 'unfair' prongs where those claims are predicated on misrepresentation and

4    deception." *Watkins I*, 550 F. Supp. 3d at 834. Because Plaintiffs have not shown reliance (*see supra*

5    pp. 21), they cannot state UCL claim under the "unlawful" or "unfair" prongs, as well.

6    Plaintiffs' assertion of UCL liability under the "unlawful" and "unfair" prongs also rests on

7    their contention that Apple's liability for the CLRA, the Song-Beverly Act, and fraud by omission

8    provides the requisite "unlawful conduct" (Compl. ¶ 84), "'unfair'" conduct (*id.* ¶ 86), or "deceptive

9    conduct" (*id.* ¶ 85). Because these other claims fail as a matter of law, the UCL claim falls, too. *See,*

10   *e.g.*, *Tan v. GrubHub, Inc.*, 171 F. Supp. 3d 998, 1010–11 (N.D. Cal. 2016) ("[w]here the UCL claim

11   is premised on the same acts alleged in the complaint's other causes of action, and those causes of

12   action fail, the UCL claim likewise must be dismissed"); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d

13   1074, 1104–05 (N.D. Cal. 2017) ("where the unfair business practices alleged under the unfair prong

14   of the UCL overlap entirely with the business practices addressed in the fraudulent and unlawful prongs

15   of the UCL, the unfair prong … cannot survive if the claims under the other two prongs [] do not

16   survive"); *Yastrab*, 2015 WL 1307163, at *6 (same if UCL claim overlaps with CLRA claim).

17   (b) <u>Plaintiffs do not have capacity to raise the consumer protection claims</u>. Mr. Narayanan, a

18   Florida resident who alleges no connection to California, cannot bring claims arising under California

19   law. *Sponchiado v. Apple Inc.*, No. 18-7533-HSG, 2019 WL 6117482, at *7 (N.D. Cal. Nov. 18, 2019)

20   (non-resident plaintiff cannot assert California claims); *Granfield v. NVIDIA Corp.*, No. 11-5403-JW,

21   2012 WL 2847575, at *2–3 (N.D. Cal. July 11, 2012) (dismissing out-of-state plaintiffs' UCL and

22   CLRA claims). His UCL and CLRA claims should thus be dismissed. And Ms. Saedi acknowledges

23   that she has not served the required CLRA demand notice, and that she therefore does not seek damages

24   under the CLRA. (Compl. ¶ 119.) Because the Complaint does not meet the standard for equitable

25   relief (*see infra* pp. 22–24), and because there is no proper plaintiff to seek damages under the CLRA,

26   the Court should dismiss the CLRA claim in its entirety.

27   **E.    Plaintiffs Do Not Meet the Requirements to Seek Equitable Relief**

28   Plaintiffs urge the Court to provide equitable relief under their consumer protection claims.

(*See* Compl. ¶¶ 91 (UCL; injunctive relief), 121, 123 (CLRA; injunctive relief), 135 (unjust enrich-ment, restitution, disgorgement or other equitable remedies).)  The UCL and unjust enrichment claims (Counts II & IV) are entirely equitable and should be dismissed in their entirety; the Complaint's re-quest for equitable relief should be dismissed (Compl. ¶¶ 6, 123, 135, Prayer F, G); and the unjust enrichment claim is duplicative of Plaintiffs' statutory and tort claims and should be dismissed.

### 1.    *Plaintiffs Have an Adequate Remedy at Law.*

Under California's consumer protection statutes, "the traditional principles governing equitable remedies in federal courts, including the requisite inadequacy of legal remedies, apply when a party requests restitution." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020); *see also Nationwide Biweekly Admin., Inc. v. Sup. Ct. of Alameda Cty.*, 9 Cal. 5th 279, 326 (2020) ("[C]ivil causes of action authorized by the UCL … must properly be considered equitable, rather than legal, in nature.").  The same requirement—to show inadequacy of remedies at law—applies to claims for eq-uitable relief on an unjust enrichment theory.  *In re Facebook PPC Advert. Litig.*, 709 F. Supp. 2d 762, 770 (N.D. Cal. 2010).  The adequacy of a remedy at law does not turn on the merits of their claims; the question is, if Plaintiffs prevail on their claims, would the available remedy be "adequate"?  *Mullins v. Premier Nutrition Corp.*, No. 13-1271-RS, 2018 WL 510139, at *2 (N.D. Cal. Jan. 23, 2018).[7]

In a case like this, "based on an alleged product defect," courts "generally hold that monetary damages are an adequate remedy."  *In re MacBook Keyboard Litig.*, No. 18-2813-EJD, 2020 WL 6047253, at *3 (N.D. Cal. Oct. 13, 2020); *see also Williams v. Apple Inc.*, No. 19-4700-LHK, 2020 WL 6743911, at *9 (N.D. Cal. Nov. 17, 2020) ("Monetary damages are a remedy at law.").  Plaintiffs' claims rest on the assertion that they paid for functional devices and received devices that allegedly contained undisclosed defects—the type of injury classically cured by damages.  Because they have an adequate remedy at law, they cannot use demands for equitable relief under consumer protection stat-utes to "expand the court's equitable powers."  *MacBook Keyboard Litig.*, 2020 WL 6047253, at *3.

---

[7] Even when plaintiffs have failed to plead adequate claims at law, courts nevertheless dismiss claims for equitable relief.  *See, e.g.*, *Gomez v. Jelly Belly Candy Co.*, No. 17-575-CJC, 2017 WL 8941167, at *2 (C.D. Cal. Aug. 18, 2017); *Moss v. Infinity Ins. Co.*, 197 F. Supp. 3d 1191, 1203 (N.D. Cal. 2016).

2.     *The Unjust Enrichment Claim Is Duplicative and Should Be Dismissed (Count IV).*

Plaintiffs "cannot assert a claim for unjust enrichment that is duplicative of statutory or tort claims." *Leonhart v. Nature's Path Foods, Inc.*, No. 13-492-EJD, 2014 WL 1338161, at \*9 (N.D. Cal. Mar. 31, 2014). Plaintiffs' "claim and the relief sought is duplicative of" their "statutory claims under the UCL and CLRA," therefore, the unjust enrichment claim must be dismissed. *Id.*; *see also Hendricks v. StarKist Co.*, 30 F. Supp. 3d 917, 933 (N.D. Cal. 2014) (dismissing unjust enrichment "claim and relief sought" because it "is duplicative of Plaintiff's statutory claim under the CLRA and UCL").

**F.     Plaintiffs Cannot Bring Claims on Behalf of Nonresidents or Purchasers of Other Devices**

Finally, Plaintiffs cannot pursue claims based on products they never purchased, or on behalf of consumers in other states beyond Florida and California.

First, Plaintiffs cannot "unlock the doors of discovery" "armed with nothing more than conclusions" about products for which there is no named plaintiff. *Iqbal*, 556 U.S. at 678–79; *see also Eclectic Props.*, 751 F.3d at 996 (it is "unfair to [subject] the opposing party to … the expense of discovery and continued litigation" if the underlying allegations are not plausible) (citation omitted).

Here, Plaintiffs allege that they purchased three products—a MacBook Air, 13.3-inch Intel Core I-5 8-gig (Compl. ¶ 54), an Apple Magic Trackpad (*id.* ¶ 50), and a MacBook Pro Retina 13-inch (a 2015 model) (*id.* ¶ 44). Mr. Narayanan also alleges he paid for two battery replacements. (*Id.* ¶¶ 48–49.) Yet they purport to represent classes of all "consumers who purchased Apple MacBook Pro laptops equipped with Apple-branded OEM lithium-ion batteries, Apple Magic Trackpads, or Apple-branded OEM lithium-ion batteries for use in an Apple device." (*Id.* ¶ 1.) Plaintiffs' reference to any "Apple-branded" batteries is misdirected, as Apple does not manufacture batteries, but if read as broadly as Plaintiffs imply, this would reach dozens of Apple products. Even including *only* the purchasers of Apple devices listed in the first two clauses of the class definition would result in a motley class of consumers who purchased disparate devices, the overwhelming majority of which *no named plaintiff* purchased. Plaintiffs do not and cannot allege that all the devices in their class definition are so substantially similar as to justify grouping them in single classes, which destroys their purported class. They "cannot bring claims regarding … products [they] did not buy." *Leonhart*, 2014 WL 1338161, at \*4. At the very least, Plaintiffs' class must be limited only to the specific products they

purchased and not to *any* Apple lithium-ion battery for use in *any* product.  *See Sanchez v. Nurture, Inc.*, 626 F. Supp. 3d 1107, 1116–17 (N.D. Cal. 2022) (dismissing class claims involving products dissimilar to those purchased by plaintiffs).  And Ms. Saedi, who alleges that she purchased a MacBook Air (Compl. ¶ 54), does not allege she purchased *any* product in the class definition—she cannot assert a class claim that she would not fall within.

Second, Plaintiffs repeatedly allege their "individual claims are brought under the laws of the State in which [they] purchased their respective Defective Devices (Florida and California)." (Compl. ¶ 72; *see also id.* ¶ 125.)  Yet they also purport to represent a class (on their common law fraud claim) containing "[a]ll natural persons" who purchased one of the listed devices "in the United States for personal, consumer, and/or household use."  (*Id.* ¶ 58.)  For their warranty and unjust enrichment claims, they purport to represent residents of between nine and forty jurisdictions. (*Id.*)  And Plaintiffs purport to assert the breach of dozens of state statutes, (*id.* ¶¶ 72a–ll, 147a–i,) in states where no Plaintiff resides.  That is impermissible.  "Where … a representative plaintiff is lacking for a particular state, all claims based on *that* state's laws are subject to dismissal."  *Granfield*, 2012 WL 2847575, at *4 (citation omitted).  And, because "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place," Plaintiffs may represent only themselves and, at most, the alternative proposed subclasses of California and Florida purchasers.  *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012).

## VI.    CONCLUSION

The Court should reject Plaintiffs' attempt to plead a sweeping array of claims on behalf of a nationwide class of purchasers of a broad and unspecified set of devices.  Plaintiffs do not back up their claims with detailed allegations required to state a claim, nor do they explain why they should be able to recover without identifying misrepresentations or a duty to disclose in connection with devices with long-expired warranties.  The Court should grant the Motion and dismiss the Complaint in its entirety.

DATED:  January 14, 2025                    GIBSON, DUNN & CRUTCHER LLP

By:  _____/s/ Christopher Chorba_____
Christopher Chorba

*Attorneys for Defendant Apple Inc.*